**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**AUTUMN LEAVES NURSING HOME, Defendant.**

**No. GC 76–87–OS–O.**

United States District Court,
N. D. Mississippi,
Greenville Division.

April 3, 1981.

W. L. Williams, Jr., EEOC, Atlanta, Ga., for plaintiff.

Leslie D. King, Greenville, Miss., for plaintiff-intervenor.

J. Robertshaw, Robertshaw & Merideth, Greenville, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, Senior District Judge.

The Equal Employment Opportunity Commission (hereafter referred to as "EEOC"), filed its complaint in the action sub judice on June 7, 1976, against Autumn Leaves Nursing Home (hereafter referred to as "Autumn Leaves").

EEOC alleged in broad terms:

Since July 2, 1965, and continuously up until the present time, Defendant Company has intentionally engaged in unlawful employment practices ... [which] include, but are not limited to the following practices:

A. Discharging a Black employee because of her race;

B. Maintaining policies and practices, terms and conditions of employment, which deprive and tend to deprive Blacks of Equal Employment Opportunities because of their race.

and,

Since at least July 2, 1965, Defendant Company has failed, in violation of Section 711(a) and (b), 42 U.S.C. Section 2000e–10(a) and (b), to post and keep posted notices which have been prepared and approved by the Commission setting forth pertinent provisions of Title VII and information pertinent to the filing of a complaint.

EEOC sought broad injunctive relief enjoining defendant from engaging in any employment practice which discriminates because of race, requiring defendant to institute and carry out policies, practices and affirmative action programs which provide equal opportunity for blacks, and eradicate the effect of past and present unlawful employment practices; requiring defendant to post the necessary notices required by Title VII; and ordering defendant to make whole persons adversely affected by the alleged unlawful employment practices.

On August 22, 1977, the court permitted Linda Atkins, Ella Griffin, Lillian Thomas, Sophia Thomas and Marvin Washington, to intervene as plaintiff-intervenors. Frazier Jones also appears in the action as a plaintiff-intervenor.

During the pretrial proceedings on April 26, 1978, the magistrate assigned to the action recommended the sanction of dismissal against plaintiff-intervenors Linda Atkins, Lillian Thomas, and Sophia Thomas, for wilful and deliberate failure and refusal to answer defendant's interrogatories. The court, on May 10, 1978, entered an order approving the Report and Recommendations and directed the entry of final judgment by the clerk as to said plaintiff-intervenors. The court found that there was no just reason for delay in the entry of final judgment. The dismissal of the intervention complaints of the three named plaintiff-intervenors became final, no appeal having been prosecuted from the entry of the final judgment. Rule 54(b), Fed.R. Civ.P.

After entry of final judgment as to the claims of plaintiff-intervenors Linda Atkins, Lillian Thomas and Sophia Thomas, there remained as parties plaintiff only EEOC and plaintiff-intervenors Ella Griffin, Marvin Washington and Frazier Jones.

The magistrate filed with the court on September 4, 1977, his Report and Recommendation relative to Autumn Leaves' motion to dismiss the complaint and for allowance of fees and expenses. The magistrate recommended the entry of an order precluding plaintiff EEOC from introducing into evidence upon trial of this action of any acts of discrimination by defendant Autumn Leaves Nursing Home, Inc., except the following:

    a.  The incident of March 5, 1974, in the course of which Betty Ricks was allegedly discharged by defendant because she addressed her supervisor, Patricia Hernandez, by her first name.

    b.  Defendant's alleged practice of segregating its patients by race.

    c.  Defendant's alleged failure to have written objective published personnel policies and procedures prior to March 5, 1974, but EEOC should be precluded from introducing evidence of specific instances of discrimination allegedly resulting from such alleged failure.

The court accepted the magistrate's Report and Recommendation and on October 26, 1977, entered an order precluding EEOC from introducing any evidence at the trial of the action except as expressly set forth in the Report and Recommendation. This preclusion did not apply with respect to any evidence tendered at the trial by plaintiff-intervenors Ella Griffin, Marvin Washington and Frazier Jones.

The action sub judice came for hearing before the court without a jury at the United States Courthouse in Greenville, Mississippi, on June 19, 1978. The trial continued until June 21, 1978. At the conclusion of the trial, the parties presented the pretrial order in lieu of Findings of Fact and Conclusions of Law. At the request of counsel for EEOC, the court permitted the parties to arrange for procurement of a transcript of the court reporter's notes and thereafter to submit Supplemental Proposed Findings of Fact and Conclusions of Law.

The court reporter's transcript has now been prepared and copies have been obtained by counsel. The court has received counsels' Supplemental Proposed Findings of Fact and Conclusions of Law. The matter is now ripe for decision.

This Memorandum of Decision will include the court's Findings of Fact and Conclusions of Law as required by Rule 52(a), Fed.R.Civ.P.

The pretrial order entered herein on June 14, 1978, contains in paragraph seven (7) thereof, an extensive resume of facts established by the pleadings, or by stipulation, or admissions of counsel. The facts were submitted as reflecting uncontroverted matters material to the resolution of the issues. It appears unnecessary for the court to make specific findings with reference to facts which are not controverted by any party. The court adopts as a part of this Memorandum the facts as set forth in paragraph seven (7) of the pretrial order. A true copy of said paragraph is attached as an Appendix.

I. *The Claim of Ms. Betty Ricks, the Charging Party.*

Ms. Ricks was employed by Autumn Leaves as a probationary employee on October 29, 1973. Each new employee of the home is subjected to an evaluation period of ninety (90) days. Ms. Ricks completed this period in January, 1974. Mr. McKinney, Autumn Leaves' Superintendent and principal owner, terminated her services in a summary manner on March 5, 1974. Ms. Ricks filed a charge with the EEOC on March 14, 1974, contending the termination of her employment with Autumn Leaves was racially motivated. Ms. Ricks is a member of the black race.

The court finds that Ms. Ricks had a dispute on March 5, 1974, with Ms. Hernandez, her superior, a member of the white race. In the argument, Ms. Hernandez told Ms. Ricks that she should address her by the courtesy title "Ms. Hernandez", and not by her nickname "Pat". Ms. Hernandez reported the incident to Ms. Bolls, Director of Nurses, with the observation that Ms. Ricks should call her "Ms. Hernandez".

Ms. Ricks was late for work on March 5, 1974, and when Mr. McKinney arrived for the day, this fact was made known to him by Ms. Bolls. Mr. McKinney directed that Ms. Bolls send Ms. Ricks to his office. Upon her arrival, Mr. McKinney escorted her to the time clock and ordered her to punch out and leave the premises, thereby terminating her employment with Autumn Leaves.

Ms. Ricks and EEOC contend that Mr. McKinney terminated Ms. Ricks' employment with Autumn Leaves because of the dispute with Ms. Hernandez. Mr. McKinney denies that the incident played any part in his decision to terminate Ms. Ricks, and denies having any knowledge of the incident when he decided to terminate her employment. Mr. McKinney's denial is supported by the testimony of Ms. Bolls, who testified that she did not relate the dispute to Mr. McKinney until after Ms. Ricks had been terminated.

Mr. McKinney testified that his decision to terminate Ms. Ricks was motivated only because of her tardiness in reporting to work on a number of occasions, the use of private telephones of patients in violation of company regulations, the failure to attend in-service training sessions and carry her share of the workload, shirking her work, and unsatisfactory work performance.

Mr. McKinney's testimony is corroborated by the testimony of Ms. Bolls and others. Ms. Ricks' poor and unsatisfactory work performance is supported by documentary evidence taken from the files of the company.

■ The court finds that the termination of Ms. Ricks by Autumn Leaves was not motivated because of her race, but occasioned by her unsatisfactory work performance.

If it can be argued that Ms. Ricks has made a prima facie case that her discharge by Autumn Leaves was racially motivated, Autumn Leaves has produced evidence which raises a genuine issue of fact as to whether Autumn Leaves discriminated against Ms. Ricks on the occasion in question. Autumn Leaves has introduced evidence sufficient to justify a holding that Ms. Ricks was discharged because of unsatisfactory job performance, a legitimate and nondiscriminatory reason.

■ The burden rested upon Ms. Ricks to prove by a preponderance of the evidence that the reasons for her discharge offered by Autumn Leaves "were not its true reasons, but were a pretext for discrimination". *Texas Department of Community Affairs v. Joyce Ann Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1091, 67 L.Ed.2d 207 (1981).

As the court has indicated, Ms. Ricks has failed to meet the burden of proof which the law places upon her. She must fail in her charge against Autumn Leaves.

II. *The Remaining Plaintiff-Intervenors, Ms. Ella Griffin, Marvin Washington, and Frazier Jones (Members of the Black Race).*

There was no evidence introduced at trial on the claim of Frazier Jones. For this reason the claim made by this party must be denied.

The evidence reflects, and the court finds, that Ms. Griffin and Ms. Washington voluntarily left the employment of Autumn Leaves and were not discharged. They contend, however, that their decision to quit their jobs was brought about because of racially discriminatory working conditions to which they were subjected. They contend that the working conditions at Autumn Leaves were more favorable to white than black employees.

■ Without going into a detailed discussion of the work performed by all the personnel at Autumn Leaves, white and black, it is sufficient to say that this charge is not sustained by the evidence. The court finds that Ms. Griffin and Ms. Washington voluntarily resigned and left their work stations because of dissatisfaction with working conditions and the amount of pay which they received. As black members of the work force, they were not treated any different from their white counterparts.

The court holds that Ms. Griffin, Ms. Washington and Frazier Jones, have failed to prove by a preponderance of the evidence that they were subjected to disparate treatment because of their race while working at Autumn Leaves.

In summary, the court finds that the plaintiff-intervenors, Ms. Griffin, Ms. Washington and Frazier Jones, are not entitled to any relief.

### III. *The Equal Employment Opportunity Commission Charge.*

The dismissal of the claims of Ms. Ricks, Ms. Griffin, Ms. Washington and Frazier Jones, leaves for the court's consideration only the charges made by EEOC.

Ms. Ricks charge was filed with EEOC on March 14, 1974. Autumn Leaves was notified of the charge on March 15, 1974. Autumn Leaves was notified on August 5, 1975 by EEOC that efforts to conciliate the charge of Ms. Ricks had failed. At the time EEOC filed the action sub judice on June 7, 1976, it relied primarily upon its investigation of the charge conducted during the year 1974, after receiving Ms. Ricks' charge.

During the investigation by EEOC, facts were disclosed which indicated that from the time Autumn Leaves opened on April 3, 1971, until the fall of 1974, black patients did not occupy the same rooms with white patients. The black population of the home during this period was minimal. The evidence shows, however, without substantial conflict that this situation was corrected in the fall of 1974 and thereafter patients were accepted and assigned to rooms without regard to race.

The investigation also developed that a Courtesy Title Policy was not in effect in 1974. This was accomplished when Autumn Leaves adopted a nondiscriminatory Courtesy Title Policy and posted it on the bulletin board at the home on or about March 31, 1975.

■ The cause of action by EEOC must be determined by the conditions which existed at the time of the institution of the action.

On the issues presented by the evidence at trial, the court makes the findings of fact as follows:

The evidence does not sustain the charge that after the fall of 1974 patients at the home were segregated by race. The evidence shows that after the fall of 1974, at the time of the institution of this action and at the time of trial, patients in the home were not segregated by race, and were received and assigned to rooms without regard to race.

The court finds that Autumn Leaves prepared written policies and procedures at the time it commenced business in 1971. These were submitted to and approved by the United States Department of Health, Education and Welfare and by the regulatory bodies of the State of Mississippi. These policies and procedures were revised and amended from time to time and, since March 1, 1974, have been posted on the bulletin board at the home. Autumn Leaves, during the pertinent period and at the time of the trial, was in compliance with the provisions of 42 U.S.C. § 2000e–10(a), relative to the posting of notices.

■ EEOC has failed to prove by a preponderance of the evidence that Autumn Leaves has practiced, permitted or condoned during all times here pertinent, discrimination based on race in working conditions for its employees, or in the hiring or assignment of work of new hires, or in the use of any of its facilities. The complaint must be dismissed on its merits.

### IV. *Autumn Leaves' Request for Allowance of Attorney's Fees.*

■ Autumn Leaves seeks an allowance of attorney's fees pursuant to 42 U.S.C. § 2000e–5(k). This section provides that the court may allow the prevailing party, other than the EEOC or the United States, a reasonable attorney's fee as part of the costs.

The Supreme Court of the United States in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), held that "a plaintiff should not be

assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Id. at 422, 98 S.Ct. at 700.

The facts and circumstances of the action sub judice do not justify such a holding by the court. The request will be denied.

### V. Conclusion.

The court finds that the complaint should be dismissed on the merits, Autumn Leaves to recover its costs of EEOC; that the intervention-complaints of plaintiff-intervenors, Ella Griffin, Marvin Washington and Frazier Jones, should be dismissed on its merits, Autumn Leaves to recover its costs of said plaintiff-intervenors.

### APPENDIX [PARAGRAPH 7 OF THE PRE-TRIAL ORDER]

7. The following facts are established by the pleadings or by stipulation or admission of counsel. (The Court urges counsel to stipulate with reference to the necessity for and reasonableness of medical and hospital expenses when such are involved in the action. The Court also urges counsel to stipulate as to necessary repairs and reasonable charges therefor where damages to personal property are involved. Counsel should fail to stipulate only where there is a good faith denial of the necessity for and/or reasonableness of the charges.)

A. Defendant is a Mississippi corporation in the business of operating a skilled nursing home for aged clients in the city of Greenville, Mississippi, and has been doing so since April 3, 1971. It is subject to licensing and periodic inspections by state officials and by HEW to insure compliance with standards and provisions of Title VI.

B. As of November 10, 1976, Defendant employed 51 persons, including the administrative staff consisting of the administrator, an assistant, and a bookkeeper. Of the total number of employees, 17 were white and 34 black. Not taking into consideration the administrative staff (all white), there were the following supervisory personnel:

Director of Nursing, white; two Charge Nurses, both black; one Medicine Nurse, white; three Chief Aides, two black and one white; one Food Supervisor, black; and one Housekeeping Supervisor, black. Since it opened for business on April 3, 1971, a total of 12 persons have been terminated, not taking into consideration employees who did not satisfactorily complete the 90-day trial period. Of these, 6 were white (35% of the permanent white work force) and 6 were black (18% of the permanent black work force). Greenville's black population is 54%; Defendant's work force is 67% black.

C. Prior to commencing business, Defendant was required by state and federal supervisory agencies to adopt personnel policies, a Policy Statement relating to Title VII, Civil Rights Act of 1964, detailed job descriptions, detailed operational policies, etc., and Standards for Compliance with Title VII as required by HEW. Defendant was required to post and keep posted its personnel policies and the Policy Statement and Standards for Compliance referred to above at all times pertinent to this action.

D. Plaintiff-Intervenor Lillian Thomas had a conference with the Director of Nursing on April 5, 1976, at which she was questioned about treatment of Mrs. Reynolds and Mrs. Young on April 3, 1976, and was asked why she did not report for work on April 4, 1976, and was advised that her treatment of the two patients referred to was dangerous, detrimental to the patients' welfare and grounds for dismissal. She stated her intention to quit at the end of the then current shift, after being offered the opportunity to change to the 3–11 shift, and was directed to punch out on the time clock at that time. When she left, plaintiff-intervenors Sophia Thomas, Griffin and Washington left at the same time of their own accord and did not return to work. Lillian Thomas was requested to leave the Defendant's premises only after she had announced her intention to quit at the end of the shift.

E. At the time of the filing of this action, EEOC relied upon reports of investigation prepared in 1974. After 1974, EEOC received documents identified as Plaintiffs Exhibits 22, 23, 24, and 25, which files were administratively closed on July 22, 1976, and administratively reopened on April 27, 1977.

F. Defendant has not agreed to conciliation on any charges filed with the EEOC.

G. EEOC notified Defendant by letter dated August 5, 1975, that conciliation efforts had failed.

H. At the time this action was commenced, Plaintiff had no factual evidence to support its charges:

a. that Defendant had been doing business since "at least July 2, 1965";

b. that "since July 2, 1965, and continuously up until the present time, Defendant Company has intentionally engaged in unlawful employment practices . . ."; or,

c. that Defendant did not then have posted notices required by 42 U.S.C. §§ 711(a) and (b), and 2000e-10(a) and (b).

Prior to July, 1974, Defendant did not have notices posted.

I. All of Plaintiff-Intervenors were employed by Defendant as nurses aides.

J. Plaintiff-Intervenor Atkins was fired by Defendant.

K. Plaintiff-Intervenors Sophia Thomas, Marvin Washington and Ella Griffin quit.

L. Mr. and Mrs. McKinney are employees of Defendant, are white, and have been since Defendant was organized.

M. Betty Ricks was employed by Defendant from October 29, 1973, to March 5, 1974.

N. Betty Ricks was discharged by Defendant on or about March 5, 1974.

O. Plaintiff is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. (Supp. II, 1972), hereinafter referred to as "Title VII".

P. Defendant has continuously been and is now a Mississippi corporation doing business in the State of Mississippi and City of Greenville where it is engaged in the providing of health care to people and has continuously and does employ more than twenty-five (25) employees. Defendant is an employer engaged in interstate commerce pursuant to Section 701 of Title VII.

Q. On March 14, 1974, charging party, Ms. Betty Ricks, filed a charge of race discrimination with Plaintiff alleging that she had been discharged by Defendant because of her race.

R. Notice of charge of charging party, Ms. Betty Ricks, was mailed to Defendant on March 15, 1974.

S. A letter of Determination relating to the charge of Ms. Betty Ricks was mailed to Defendant on October 31, 1974.

T. Defendant was notified that conciliation efforts had failed on August 5, 1975, relating to the charge of Ms. Betty Ricks, TJA4–1050.

U. Defendant admitted in Defendant's Response to Plaintiff's Requests for Admissions on April 6, 1978, that [on or about March 5, 1974, Patricia Hernandez and Betty Ricks had a discussion or argument during which Ms. Hernandez requested that Ms. Ricks would refrain from calling Ms. Hernandez by her first name.]

V. Defendant admitted in Defendant's Response to Plaintiff's Requests for Admissions on April 6, 1978, that [on or about March 5, 1974, Ms. Patricia Hernandez reported to Ms. Muriel Bolls, Director of Nurses, that Ms. Betty Ricks had called Ms. Hernandez "Pat" and that she wanted Ms. Ricks to call her "Ms. Hernandez" in the future.