### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

### GILES INDUSTRIES, INC.

#### No. CIV–3–88–287.

United States District Court,
E.D. Tennessee, N.D.

June 30, 1989.

Katherine W. Kores, E.E.O.C., Memphis, Tenn., for plaintiff.

Jerri Lynn Saunders Bryant of Claiborne, Davis, Buuck & Hurley, Knoxville, Tenn., for defendant.

MEMORANDUM OPINION

HULL, Chief Judge.

The Equal Employment Opportunity Commission [EEOC], the agency of the United States charged with the administration and enforcement of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, brought this action against Giles Industries, Inc. [Giles], an "employer" subject to the provisions of Title VII which does business in New Tazewell, Tennessee, manufacturing mobile homes. The EEOC charged that in February, March and April of 1986, Giles failed to hire a fully qualified female electrician Letha Bentley on account of her sex. It also charged Giles with failing to maintain employment records in compliance with 29 C.F.R., Part 1602.14; failing to file Standard Form 100, Employer Information Report EEO-1, in violation of Section 709(c) of Title VII; and failing to post the notice required by Section 711(a) of Title VII, 42 U.S.C. § 2000e-10(a). Giles conceded the statutory violations but denied that it had refused employment to Letha Bentley on account of her sex. The action came to trial, without the intervention of a jury, on Thursday, June 22, 1989.

Letha Bentley testified that she was a qualified master electrician; that she was hired by Giles' Plant Manager Butch Leach on March 5, 1982, to work in Plant Two; and that when Plant Two was closing down, and many workers were being laid off in November of 1983, she was transferred to Plant Three where she continued to work as an electrician until March of 1985.

She testified that in March, she was experiencing complications resulting from a miscarriage and that she asked her supervisor, Bill Davidson, if she could have a leave of absence. When Mr. Davidson told her she could not, she advised him that she would have to quit. He did not ask, and she did not give, her reason for requesting leave or needing to quit her job. It was her testimony that she asked Mr. Davidson whether or not she was required to give notice before quitting and was told that it was not required. Nevertheless, she insisted on giving notice in the presence of co-workers including fellow electrician Bruce Parkey. She claims that she gave Mr. Davidson two weeks' oral notice; that she offered to give it in writing as well; and that she worked exactly two more weeks and then quit as of March 22, 1985.

Ms. Bentley testified that after about six months she had regained her health and was actively seeking re-employment. Shortly before Thanksgiving of 1985, she telephoned Bruce Parkey to see if Giles was hiring electricians. He did not know of any openings at that time but called her back in the week between Christmas and New Year's Day to report that he had heard that one of the electricians was about to quit or be fired. Ms. Bentley claims that on January 3, 1986, she visited the plant and talked with one of the company's owners, Mr. James Giles, about getting her job back. He told her she did not have to fill out a new application because her old one would still be on file and that they would get in touch with her if they needed another electrician. On January 13th, when the factory had reopened after the holidays, she went back to the plant and Mr. Parkey introduced her to a plant foreman named Bill Tolliver, recommending to him that she be re-employed. Mr. Tolliver discussed her privately with Grover Bailey, who had replaced Butch Leach as the Plant Manager, and then told her Giles did not need to hire anybody at that time. She claims she went back to the plant again on January 27, 1986, and this time spoke with Mr. Bailey's supervisor, General Manager Bill Clayton, and gave him an application. Mr. Clayton told her

they were going to hire another electrician but they wanted a "known commodity." She went back to see Mr. Clayton March 27th, redating her application. She claims Mr. Clayton told her he would mark her application for "special attention" and put it on Grover Bailey's desk.

■ It is undisputed that Giles did need electricians in the spring of 1986; that it hired Johnny Meyers in February (by transferring him into electrical work from maintenance—although he had not requested the move); that it hired W. Earl Maples in March; and that it hired Roger Harris in April. None of these men had applied for jobs—all were recruited upon recommendations from various foremen. It is also undisputed that Giles never contacted Ms. Bentley about a job. Finally, there was nothing in the evidence that would indicate that any of the three men hired were any better qualified for the job than Ms. Bentley. All of these facts give rise to the inference of sex discrimination. Other undisputed facts supporting this inference are that Giles has never had another female plant worker before or since Letha Bentley; Giles does not have toilet facilities for female workers; and Giles' application forms request that the applicant supply his wife's name and telephone number in case of emergency.

Plaintiff's proof was bolstered by the testimony of a Hancock County female factory worker named Thelma Helton who applied for work at Giles in May and again in August of 1988. Mrs. Helton testified that she was told by a lady in the office (who met the description of the company's secretary-treasurer Dorothy Giles Neely) that Giles did not hire women to work in the plant. However, Mrs. Neely and the other women who work in the office all denied ever telling this to a job applicant.

There is no question that the EEOC made out a *prima facie* of sex discrimination based on Giles' failure to rehire Letha Bentley. It proved that she was a female; that she applied for, and was qualified for employment with Giles; that despite her qualifications, she was rejected; that after she was rejected (or told they did not need

anybody at that time), positions remained open; and that Giles actively recruited males to fill positions for which she was qualified.

■ Once the plaintiff has proved a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its failure to hire. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In this case Giles took the position that Ms. Bentley had quit her former position without notice and that it was company policy not to rehire employees who have quit without proper notice. It also claimed that the people it hired in 1986 were highly recommended for their ability to work fast in a production line, and that Ms. Bentley's qualifications for high speed work were not well known to them because she had worked for the company at a time when it was operating at a much slower pace. These reasons were not substantiated by the evidence and, in fact, the defense that Ms. Bentley had quit without proper notice was the most blatant example of a pretextual reason that this Court has ever seen.

Ms. Bentley visited the plant three times in January of 1986, and twice in March and was never told she was ineligible for rehire. Roscoe Gibson, Jr., who spoke to Mr. Giles about rehiring Ms. Bentley was not told she was ineligible for rehire. There is nothing in the company handbook to indicate that Giles would not rehire someone who quit without notice and nothing in the handbook to indicate what kind of notice, if any, is required when an employee resigns. At least one other employee, named Randy Bolden (or Bolen), was rehired after quitting without notice. Even Frances Patty, who worked with personnel records in the company office, testified that she was not aware of any policy about not rehiring people who quit without notice. But, if there *were* such a policy, Ms. Bentley testified that she *did* give notice; Bruce Parkey corroborated her testimony; and Bill Davidson, who had given the EEOC a signed statement that she had quit without notice, when pressed, remembered her having given him oral notice. It is abundantly clear that nobody at Giles ever questioned the circumstances of Ms. Bentley's resignation in March of 1985, until after she had filed her sex discrimination claim, and it was necessary to articulate a legitimate, non-discriminatory business reason for not rehiring her!

Even the defense that the other people hired were somehow better qualified was not substantiated by clear, reasonably specific or legally sufficient evidence. There was some evidence that Ms. Bentley was a better electrician than any of the men hired and other evidence that all were about equally qualified. It was obvious to the Court that all concerned were qualified to do the job but that Ms. Bentley was hanging around the plant trying to get hired and the three selected had to be recruited away from other jobs. In the opinion of the Court, the defendant failed to rebut the EEOC's *prima facie* case of sex discrimination and, accordingly, the EEOC is entitled to all the relief requested.

■ With regard to the question of back pay, the parties stipulated prior to trial that in the year 1986, when Ms. Bentley should have been hired by Giles, the three men hired in her place earned $12,865.78, $10,325.59, and $9,508.69, for an average salary of $10,900.02. In that year, Ms. Bentley had no earnings at all. For 1986, she is entitled to an award of $10,900.02 plus prejudgment interest. In the year 1987, the same three men earned $12,119.91, $14,381.95, and $14,817.93 for an average of $13,776.59. Despite attempts to mitigate her damages, Ms. Bentley earned only $253.16, and is, accordingly, entitled to an award of $13,776.59 less $253.16, or $13,523.59 for the year 1987, plus prejudgment interest. In 1988, Ms. Bentley earned $11,158.16 and is entitled to the difference between this amount and the average earnings of Myers, Maples and Harris, plus prejudgment interest, although the Court does not have these figures. She is also entitled to recover the difference between her earnings in 1989, and those of the three comparable male electricians at Giles, until the date of trial. The parties are ORDERED to provide the Court with the in-

formation necessary to compute her actual award of back pay or stipulate her award within ten (10) days from the date of this opinion.

Ms. Bentley has also requested reinstatement. At trial she testified that she would like to return to work at Giles and that her present job in Norris requires an extra twenty-three miles of driving each way. The Court finds that reinstatement is appropriate in this instance and will order this relief as well.

### ORDER

For the reasons stated in a memorandum opinion this day passed to the Clerk for filing, judgment is hereby ENTERED on behalf of the plaintiff Equal Employment Opportunity Commission and against the defendant Giles Industries, Inc.

Letha Bentley is AWARDED back pay in an amount to be calculated on the basis of figures supplied to the Court within ten (10) days from the date of this Order.

Letha Bentley is entitled to reinstatement at Giles Industries Inc. Giles is hereby ORDERED within ten (10) days to offer her employment as an electrician in a position similar to the one for which she applied in 1986 at a current rate of pay for similar services performed by comparable employees hired in 1986. Letha Bentley will have ten (10) days in which to either accept or reject this offer of employment.

Giles Industries, Inc. is FINED the statutory sum of $100.00 for its violation of 42 U.S.C. § 2000e–10.

Giles Industries, Inc., and its agents and successors, are hereby ENJOINED from further violations of Title VII or the Commission's recordkeeping and reporting requirements.

The EEOC is AWARDED it statutory costs under 28 U.S.C. § 1920 and its costs incurred during pretrial discovery in an amount to be determined after submission of a detailed affidavit by its counsel within twenty (20) days of the date of this Order.