# TEXAS DEPARTMENT OF COMMUNITY AFFAIRS *v.* BURDINE

No. 79–1764.   Argued December 9, 1980—Decided March 4, 1981

POWELL, J., delivered the opinion for a unanimous Court.

*Gregory Wilson,* Assistant Attorney General of Texas, argued the cause *pro hac vice* for petitioner. With him on the brief were *Mark White,* Attorney General, *John W. Fainter, Jr.,* First Assistant Attorney General, *Lonny F. Zwiener,* Assistant Attorney General, and *Paul R. Gavia.*

*Hubert L. Gill* argued the cause and filed a brief for respondent.*

JUSTICE POWELL delivered the opinion of the Court.

This case requires us to address again the nature of the evidentiary burden placed upon the defendant in an em-

---

*\**Robert E. Williams* and *Douglas S. McDowell* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

ployment discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* The narrow question presented is whether, after the plaintiff has proved a prima facie case of discriminatory treatment, the burden shifts to the defendant to persuade the court by a preponderance of the evidence that legitimate, nondiscriminatory reasons for the challenged employment action existed.

## I

Petitioner, the Texas Department of Community Affairs (TDCA), hired respondent, a female, in January 1972, for the position of accounting clerk in the Public Service Careers Division (PSC). PSC provided training and employment opportunities in the public sector for unskilled workers. When hired, respondent possessed several years' experience in employment training. She was promoted to Field Services Coordinator in July 1972. Her supervisor resigned in November of that year, and respondent was assigned additional duties. Although she applied for the supervisor's position of Project Director, the position remained vacant for six months.

PSC was funded completely by the United States Department of Labor. The Department was seriously concerned about inefficiencies at PSC.[1] In February 1973, the Department notified the Executive Director of TDCA, B. R. Fuller, that it would terminate PSC the following month. TDCA officials, assisted by respondent, persuaded the Department to continue funding the program, conditioned upon PSC's reforming its operations. Among the agreed conditions were the appointment of a permanent Project Director and a complete reorganization of the PSC staff.[2]

After consulting with personnel within TDCA, Fuller hired

---

[1] Among the problems identified were overstaffing, lack of fiscal control, poor bookkeeping, lack of communication among PSC staff, and the lack of a full-time Project Director. Letter of March 20, 1973, from Charles Johnson to B. R. Fuller, reprinted in App. 38–40.

[2] See *id.,* at 39.

a male from another division of the agency as Project Director. In reducing the PSC staff, he fired respondent along with two other employees, and retained another male, Walz, as the only professional employee in the division. It is undisputed that respondent had maintained her application for the position of Project Director and had requested to remain with TDCA. Respondent soon was rehired by TDCA and assigned to another division of the agency. She received the exact salary paid to the Project Director at PSC, and the subsequent promotions she has received have kept her salary and responsibility commensurate with what she would have received had she been appointed Project Director.

Respondent filed this suit in the United States District Court for the Western District of Texas. She alleged that the failure to promote and the subsequent decision to terminate her had been predicated on gender discrimination in violation of Title VII. After a bench trial, the District Court held that neither decision was based on gender discrimination. The court relied on the testimony of Fuller that the employment decisions necessitated by the commands of the Department of Labor were based on consultation among trusted advisers and a nondiscriminatory evaluation of the relative qualifications of the individuals involved. He testified that the three individuals terminated did not work well together, and that TDCA thought that eliminating this problem would improve PSC's efficiency. The court accepted this explanation as rational and, in effect, found no evidence that the decisions not to promote and to terminate respondent were prompted by gender discrimination.

The Court of Appeals for the Fifth Circuit reversed in part. 608 F. 2d 563 (1979). The court held that the District Court's "implicit evidentiary finding" that the male hired as Project Director was better qualified for that position than respondent was not clearly erroneous. Accordingly, the court affirmed the District Court's finding that respondent was not discriminated against when she was not promoted. The

Court of Appeals, however, reversed the District Court's finding that Fuller's testimony sufficiently had rebutted respondent's prima facie case of gender discrimination in the decision to terminate her employment at PSC. The court reaffirmed its previously announced views that the defendant in a Title VII case bears the burden of proving by a preponderance of the evidence the existence of legitimate nondiscriminatory reasons for the employment action and that the defendant also must prove by objective evidence that those hired or promoted were better qualified than the plaintiff. The court found that Fuller's testimony did not carry either of these evidentiary burdens. It, therefore, reversed the judgment of the District Court and remanded the case for computation of backpay.[3] Because the decision of the Court of Appeals as to the burden of proof borne by the defendant conflicts with interpretations of our precedents adopted by other Courts of Appeals,[4] we granted certiorari. 447 U. S. 920 (1980). We now vacate the Fifth Circuit's decision and remand for application of the correct standard.

## II

In *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.[5] First, the plaintiff has the burden of proving by

---

[3] The Court of Appeals also vacated the District Court's judgment that petitioner did not violate Title VII's equal pay provision, 42 U. S. C. § 2000e–2 (h), but that decision is not challenged here.

[4] See, *e. g., Lieberman* v. *Gant,* 630 F. 2d 60 (CA2 1980); *Jackson* v. *U. S. Steel Corp.,* 624 F. 2d 436 (CA3 1980); *Ambush* v. *Montgomery County Government,* 22 FEP Cases 1101 (CA4 1980); *Loeb* v. *Textron, Inc.,* 600 F. 2d 1003 (CA1 1979). But see *Vaughn* v. *Westinghouse Elec. Corp.,* 620 F. 2d 655 (CA8 1980), cert. pending, No. 80–276.

[5] We have recognized that the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes. See *McDonnell Douglas,* 411 U. S., at 802, n. 14; *Teamsters* v. *United States,* 431 U. S. 324, 335–336, and n. 15 (1977).

the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*, at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804.

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. See *Board of Trustees of Keene State College* v. *Sweeney,* 439 U. S. 24, 25, n. 2 (1978); *id.*, at 29 (STEVENS, J., dissenting). See generally 9 J. Wigmore, Evidence § 2489 (3d ed. 1940) (the burden of persuasion "never shifts"). The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question.

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a proponderence of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.[6] The prima facie case serves an important

---

[6] In *McDonnell Douglas, supra,* we described an appropriate model for a prima facie case of racial discrimination. The plaintiff must show:

"(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U. S., at 802.

We added, however, that this standard is not inflexible, as "[t]he facts necessarily will vary in Title VII cases, and the specification above

function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See *Teamsters* v. *United States,* 431 U. S. 324, 358, and n. 44 (1977). As the Court explained in *Furnco Construction Corp.* v. *Waters,* 438 U. S. 567, 577 (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.[7]

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See *Sweeney, supra,* at 25. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plain-

---

of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations." *Id.,* at 802, n. 13.

In the instant case, it is not seriously contested that respondent has proved a prima facie case. She showed that she was a qualified woman who sought an available position, but the position was left open for several months before she finally was rejected in favor of a male, Walz, who had been under her supervision.

[7] The phrase "prima facie case" not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, Evidence § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense.

tiff.[8]  To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.[9]  The explanation provided must be legally sufficient to justify a judgment for the defendant.  If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted,[10] and the factual inquiry proceeds to a new level of specificity.  Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the

---

[8] This evidentiary relationship between the presumption created by a prima facie case and the consequential burden of production placed on the defendant is a traditional feature of the common law.  "The word 'presumption' properly used refers only to a device for allocating the production burden."  F. James & G. Hazard, Civil Procedure § 7.9, p. 255 (2d ed.  1977) (footnote omitted).  See Fed. Rule Evid. 301.  See generally 9 J. Wigmore, Evidence § 2491 (3d ed. 1940).  Cf. J. Maguire, Evidence, Common Sense and Common Law 185–186 (1947).  Usually, assessing the burden of production helps the judge determine whether the litigants have created an issue of fact to be decided by the jury.  In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.

[9] An articulation not admitted into evidence will not suffice.  Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel.

[10] See generally J. Thayer, Preliminary Treatise on Evidence 346 (1898).  In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case.  A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.  Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.  Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See *McDonnell Douglas,* 411 U. S., at 804–805.

## III

In reversing the judgment of the District Court that the discharge of respondent from PSC was unrelated to her sex, the Court of Appeals adhered to two rules it had developed to elaborate the defendant's burden of proof. First, the defendant must prove by a preponderence of the evidence that legitimate, nondiscriminatory reasons for the discharge existed. 608 F. 2d, at 567. See *Turner* v. *Texas Instruments, Inc.,* 555 F. 2d 1251, 1255 (CA5 1977). Second, to satisfy this burden, the defendant "must prove that those he hired . . . were somehow *better* qualified than was plaintiff; in other words, comparative evidence is needed." 608 F. 2d, at 567 (emphasis in original). See *East* v. *Romine, Inc.,* 518 F. 2d 332, 339–340 (CA5 1975).

## A

The Court of Appeals has misconstrued the nature of the burden that *McDonnell Douglas* and its progeny place on the defendant. See Part II, *supra.* We stated in *Sweeney* that "the employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.' " 439 U. S., at 25, n. 2, quoting *id.,* at 28, 29 (STEVENS, J., dissenting). It is plain that the Court

of Appeals required much more: it placed on the defendant the burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff.[11]

The Court of Appeals distinguished *Sweeney* on the ground that the case held only that the defendant did not have the burden of proving the absence of discriminatory intent. But this distinction slights the rationale of *Sweeney* and of our other cases. We have stated consistently that the employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. The Court of Appeals would require the defendant to introduce evidence which, in the absence of any evidence of pretext, would *persuade* the trier of fact that the employment action was lawful. This exceeds what properly can be demanded to satisfy a burden of production.

The court placed the burden of persuasion on the defendant apparently because it feared that "[i]f an employer need

---

[11] The court reviewed the defendant's evidence and explained its deficiency:

"Defendant failed to introduce comparative factual data concerning Burdine and Walz. Fuller merely testified that he discharged and retained personnel in the spring shakeup at TDCA primarily on the recommendations of subordinates and that he considered Walz qualified for the position he was retained to do. Fuller failed to specify any objective criteria on which he based the decision to discharge Burdine and retain Walz. He stated only that the action was in the best interest of the program and that there had been some friction within the department that might be alleviated by Burdine's discharge. Nothing in the record indicates whether he examined Walz' ability to work well with others. This court in *East* found such unsubstantiated assertions of 'qualification' and 'prior work record' insufficient absent data that will allow a true *comparison* of the individuals hired and rejected." 608 F. 2d, at 568.

only *articulate*—not prove—a legitimate, nondiscriminatory reason for his action, he may compose fictitious, but legitimate, reasons for his actions." *Turner* v. *Texas Instruments, Inc., supra,* at 1255 (emphasis in original). We do not believe, however, that limiting the defendant's evidentiary obligation to a burden of production will unduly hinder the plaintiff. First, as noted above, the defendant's explanation of its legitimate reasons must be clear and reasonably specific. *Supra,* at 255. See *Loeb* v. *Textron, Inc.,* 600 F. 2d 1003, 1011–1012, n. 5 (CA1 1979). This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded "a full and fair opportunity" to demonstrate pretext. Second, although the defendant does not bear a formal burden of persuasion, the defendant nevertheless retains an incentive to persuade the trier of fact that the employment decision was lawful. Thus, the defendant normally will attempt to prove the factual basis for its explanation. Third, the liberal discovery rules applicable to any civil suit in federal court are supplemented in a Title VII suit by the plaintiff's access to the Equal Employment Opportunity Commission's investigatory files concerning her complaint. See *EEOC* v. *Associated Dry Goods Corp.,* 449 U. S. 590 (1981). Given these factors, we are unpersuaded that the plaintiff will find it particularly difficult to prove that a proffered explanation lacking a factual basis is a pretext. We remain confident that the *McDonnell Douglas* framework permits the plaintiff meriting relief to demonstrate intentional discrimination.

### B

The Court of Appeals also erred in requiring the defendant to prove by objective evidence that the person hired or promoted was more qualified than the plaintiff. *McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally. 411 U. S., at 804. The Court of Appeals' rule would require

the employer to show that the plaintiff's objective qualifications were inferior to those of the person selected. If it cannot, a court would, in effect, conclude that it has discriminated.

The court's procedural rule harbors a substantive error. Title VII prohibits all discrimination in employment based upon race, sex, and national origin. "The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and . . . neutral employment and personnel decisions." *McDonnell Douglas, supra,* at 801. Title VII, however, does not demand that an employer give preferential treatment to minorities or women. 42 U. S. C. § 2000e-2 (j). See *Steelworkers* v. *Weber,* 443 U. S. 193, 205–206 (1979). The statute was not intended to "diminish traditional management prerogatives." *Id.,* at 207. It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired. *Furnco Construction Corp.* v. *Waters,* 438 U. S. 567, 577–578 (1978).

The views of the Court of Appeals can be read, we think, as requiring the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference. Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. *Loeb* v. *Textron, Inc., supra,* at 1012, n. 6; see *Lieberman* v. *Gant,* 630 F. 2d 60, 65 (CA2 1980).

## IV

In summary, the Court of Appeals erred by requiring the defendant to prove by a preponderance of the evidence the

existence of nondiscriminatory reasons for terminating the respondent and that the person retained in her stead had superior objective qualifications for the position.[12]   When the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions.   The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[12] Because the Court of Appeals applied the wrong legal standard to the evidence, we have no occasion to decide whether it erred in not reviewing the District Court's finding of no intentional discrimination under the "clearly erroneous" standard of Federal Rule of Civil Procedure 52 (a). Addressing this issue in this case would be inappropriate because the District Court made no findings on the intermediate questions posed by *McDonnell Douglas.*