**Theresa M. McKEON, Plaintiff,**

v.

**VAICAITIS, SCHORR, RICHARDS, et al., M.D., P.A., d/b/a Diagnostic Clinic, and Louis Palermo, M.D., Andrew Peters, M.D. and Donald Moyer, Defendants.**

**No. 90–287–CIV–T–17B.**

United States District Court, M.D. Florida, Tampa Division.

June 16, 1993.

---

Mark Frederick Kelly, Charleen Catherine Ramus, Kelly, McKee, Herdman & Ramus, P.A., Tampa, FL, for plaintiff.

James J. Cusack, John William Robinson, IV, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion for full summary judgment, Docket # 70, filed April 13, 1992 and Plaintiff's response, Docket # 83, filed on August 14, 1992. For the following reasons, the motion for summary judgment is **granted** in part and **denied** in part.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996 F.2d 292 (5th Cir.1969).

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

The complaint was filed on March 9, 1990, and was supplemented February 1, 1991. The supplemented complaint brought under 42 U.S.C. §§ 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 207, Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), Equal Pay Act of 1963, and Fla. Stat. §§ 760.01 *et seq.*, Florida Human Rights Act.

## FACTUAL SETTING

Plaintiff, a female, began her employment with Diagnostic Clinic in December 1987 as a Certified Registered Nurse Anesthetist (hereinafter "CRNA") (Plaintiff's depo. Vol. I, pp. 16–17.) Plaintiff initially received compensation of $39,000.00 per annum (Plaintiff's depo. Vol. I, p. 125). Upon her six month evaluation, Plaintiff received a four percent salary increase (Plaintiff's depo. Vol. I, p. 127). Approximately two months later, Plaintiff received an additional eight and one-half percent salary increase. (Plaintiff's depo. Vol. I, p. 127)

Plaintiff's complaint alleges that she was assigned more work and more difficult work tasks than the male CRNAs and that she was treated differently than male CRNAs with regard to scheduling of work hours, vacation, compensation for overtime and continuing education, on the basis of her sex. Plaintiff also alleges that when she complained of the disparate treatment she was receiving in comparison to the male CRNAs; she received a less favorable work schedule. Additionally, Plaintiff alleges that she was paid substantially less than similarly qualified and less qualified male CRNAs, despite the fact that she alleges she performed more work and more difficult work.

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in June of 1989. She ceased employment at Diagnostic Clinic in July of 1989 and received her Right to Sue Letter from the EEOC on December 10, 1989.

## CONCLUSIONS OF LAW

Plaintiff's Title VII claim alleges disparate treatment and constructive discharge. A disparate treatment claim is viewed under what has come to be known as the "*McDonnell Douglas/Burdine* standard." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A claim of disparate treatment alleges that an individual employee received less favorable treatment due to the employees race, color, sex, religion or national origin.

The plaintiff in a disparate treatment case must prove discriminatory intent in order to prevail. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her and, in the instant case, that the discrimination was based on her sex. Initially, Plaintiff must establish a *prima facie* case of sexual discrimination by a preponderance of the evidence. *Id.* at 253, 101 S.Ct. at 1093. If Plaintiff meets her burden, the employer must then "articulate some legitimate, nondiscriminatory reason" for its treatment of the employee. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Plaintiff then again has the burden to establish, by the preponderance of the evidence, that the legitimate, non-discriminatory reasons expounded by the employer were not its true reasons, but were mere pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

*McDonnell Douglas* establishes a four part test which the Plaintiff may use to establish her *prima facie* case. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The Court in that case noted that these elements will vary based on the particular circumstances of a specific disparate treatment case. *Id.* In the instant case, Plaintiff must produce evidence that: 1) she is a member of a protected class under Title VII, 2) an adverse employment action occurred, 3) she and a similarly situated non-protected person received dissimilar treatment, and 4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between sex and the disparate treatment *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984).

A constructive discharge case is like a disparate treatment case. Plaintiff must allege that the employer intentionally rendered the working conditions so intolerable that the employee was compelled to quit involuntarily. *Buckley v. Hospital Corporation of America, Inc.,* 758 F.2d 1525 (11th Cir.1985). To find constructive discharge, the trier of fact must be satisfied that working conditions were so difficult or unpleasant that a "reasonable person in the employee's shoes would have felt compelled to resign." *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987), citing, *Bourque v. Powell Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980).

Should plaintiff establish a *prima facie* case, that alone will not enable the plaintiff to survive the motion for summary judgment. *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590 (11th Cir.1987). "The ultimate question in a disparate treatment case is not whether the plaintiff established a *prima facie* case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" *Grigsby,* 821 F.2d at 595 (citing *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984)) Plaintiff must do more than show a *prima facie* case in order to avoid a summary judgment motion. Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment. *Grigsby,* 821 F.2d at 597, *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

Although a plaintiff may use statistics to bolster her case, these statistics are not controlling in an individual disparate treatment case, particularly if the employer can show legitimate, non-discriminatory reasons for its actions. *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1825.

## DISCUSSION

Plaintiff's complaint alleges discrimination based on her sex under both a disparate impact theory and under constructive discharge. It is undisputed that Plaintiff is a member of a protected group covered by Title VII.

Plaintiff began employment at Diagnostic Clinic in December of 1987. A CRNA typically has a forty hour work week plus overtime and "call time". The CRNA's received varying salaries plus overtime, in the form of a bonus. Plaintiff initially received both overtime and "call time". In December 1988, Plaintiff requested that she receive a more

standardized schedule. She did not like the irregular surgery schedule or the amount of overtime and excessive "call time". The clinic gave Plaintiff preferential treatment in scheduling her a standard five-day, forty hour surgery schedule with minimum overtime and reduced "call time". This was an unpopular decision with many of the other CRNA's who now had to cover the time that Plaintiff would have covered. Plaintiff's co-workers complained to the administration of Diagnostic Clinic in a petition dated March 28, 1989.

Six months after Plaintiff began employment at Diagnostic Clinic, she received a four percent salary increase. Two months later, August 1988, Plaintiff received an additional eight and a half percent salary increase. At the time of the August increase, Diagnostic Clinic instituted a 15 month pay freeze for all current employees. The Clinic also began a systematic one-time per year review of all nurses' wages instead of the old system which had reviews on anniversary dates. The next review was to be in January 1990.

In March 1989, The Clinic hired Dan Gagner and Mike McMahon as CRNA's. Both were males and received salaries of $46,000 per year, $2,000 more than the plaintiff. Unlike the Plaintiff, both these new CRNA's worked full schedules with overtime and "call time". Plaintiff claims that she was discriminated against because these new "male" CRNA's received more compensation than she did and she had more seniority. These new CRNA's were also making more than David Smith, a male CRNA with more experience. The new CRNA's were also making the same as Carol Marshall who had more experience. Plaintiff does not produce sufficient evidence to show that she was more severely impacted than either David Smith or Carol Marshall.

Plaintiff also claims that she was assigned more difficult cases and a greater number of cases than the male CRNA's. The Clinic made CRNA work assignments to accommodate surgical needs, emergencies, employee availability, vacations, holidays and employee requests. Plaintiff's request for a more regular schedule meant she received less overtime pay and shorter surgery assignments.

Plaintiff could not be assigned to open-ended surgeries where overtime was likely. She received a greater number of cases because she received shorter cases that did not require overtime. Plaintiff does not set forth any evidence that these assignments were made based on her sex.

Plaintiff did not have a good working relationship with several of her co-workers, both male and female. In the petition of March 28, 1989, Plaintiff's co-workers complained that plaintiff's preferential treatment has resulted in lower morale and increased work assignments on the remaining staff. This petition was signed by both male and female co-workers. They stated that if she was not going to carry an equal burden, she should resign or be terminated. Despite this petition, the Clinic took no action against the Plaintiff.

Plaintiff states in her answer to the motion for summary judgment several incidents in which she believes that women were discriminated against by Diagnostic Clinic. Statistics do not in and of themselves establish an individual case of discrimination. Although this Court does not condone any possible discriminatory actions, Plaintiff's ultimate burden is to prove that she, specifically, was discriminated against.

Plaintiff alleges that Defendant Moyer discriminated against her with regard to scheduling by giving himself and his two favorite CRNA's, Carol Marshall and Mike Baier, the best work assignments. David Smith, one of plaintiffs co-workers, stated in his deposition that he did not believe that Moyer disliked plaintiff because she was female, but rather simply did not like the plaintiff. Plaintiff was asked in her deposition if she believed that Moyer disliked her because of her sex. Plaintiff did not know if that was the reason Moyer did not like her. When asked if she had any evidence that Moyer took her sex into account in making work assignments, Plaintiff stated she did not have any evidence that she could think of. She also admitted that she had no evidence of sexual bias.

■ There is, however, a genuine issue as to a material fact with regard to Defendant Peters. In Plaintiff's affidavit, she states

that Defendant Peters stated to Plaintiff, concerning the hiring of Gagner and McMahon, "Dan is a male and has a wife and kid; besides, they're men and they deserve a higher wage". (McKeon aff. p. 2.) These issues were previously raised by the Plaintiff in her deposition of Defendant Peters. (Peters depo. p. 69–70.) It must be remembered that in ruling on a motion for summary judgment, the court is bound to view the evidence in the light most favorable to the non-moving party. These alleged statements by Defendant Peters raise a triable issue as to a material fact. These statements may possibly constitute direct evidence, and may also be used by the Plaintiff to establish pretext on the part of Defendant Peters. Therefore, summary judgment must be **denied** as to Defendant Peters.

These statements appear to have been made by Defendant Peters while he was acting within the scope of his employment. Under the theory of respondeat superior, the employer is responsible for the wrongful acts of its employee that occurred within the scope of their employment. The Defendant Peters alleged statements were made while he was acting within the scope of his employment. Since summary judgment can not be granted with regards to Defendant Peters, it must also be **denied** to Diagnostic Clinic as well.

■ Plaintiff's allegations with regard to Defendants Palermo and Moyer are conclusory. Plaintiff does not present evidence that is capable of rebutting the legitimate, non-discriminatory reasons set forth by Defendants Palermo and Moyer for their treatment of her. Plaintiff has failed to establish a *prima facie* case of discrimination. Even if she had, she has completely failed to set forth evidence of a material issue of fact that the legitimate, non-discriminatory reasons of Defendants Palermo and Moyer were pretextual. Defendant's Palermo and Moyer motion for summary judgment must be **granted.**

Additionally, this Court must find that no genuine issue of fact exists concerning the constructive discharge claim with regards to all Defendants. Defendants were not solely responsible for the adverse working conditions and those conditions were not so intolerable that a reasonable person standing in Plaintiff's shoes would have been compelled to resign. Accordingly, the motion for summary judgment for the claims of constructive discharge is **granted.**

This Court is satisfied that no factual dispute remains as to this issue concerning Defendants Palermo or Moyer that precludes the entry of summary judgment.

Accordingly it is

**ORDERED** that Defendant's motion for summary judgment be **GRANTED** as to Defendants Palermo and Moyer as there exists no issue of material fact that Defendants discriminated against Plaintiff on the basis of sex.

**ORDERED** that Defendant's motion for summary judgment be **DENIED** as to Defendants Peters and Diagnostic Clinic as there does appear to exist an issue of material fact that Defendants Peters and Diagnostic Clinic discriminated against Plaintiff on the basis of sex.

**DONE AND ORDERED.**