Gary L. KELLER, Plaintiff,

v.

WESTERN–SOUTHERN LIFE INSURANCE COMPANY, Defendant.

No. 93–2192–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

March 24, 1995.

Gary L. Keller, Palm Harbor, FL, pro se.

Theodore Emanuel Karatinos, Law Office of Ted E. Karatinos, St. Petersburg, FL, for plaintiff.

Mark E. Levitt, Hogg, Allen, Norton & Blue, P.A., Tampa, FL, Alice M. Fitzgerald, Cincinnati, OH, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

The cause is before the Court on the defendant's motion for summary judgment and memorandum in support thereof (Docket Nos. 27 and 28), filed January 17, 1995, and response thereto, filed February 8, 1995 (Docket No. 32).

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment. As the district court in *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808 (N.D.Tex. 1994), so summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment ... The existence of a mere scintilla of evidence will not suffice ... (cites omitted) at 810–811.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discov-

ery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. [477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d] at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, [477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d] at p. 274.

This action is pending before the Court based on the plaintiff's filing of his first amended complaint on March 23, 1994 (Docket No. 13). The amended complaint alleges a civil action pursuant to 42 U.S.C. § 12101, *et seq.*, the Americans with Disabilities Act of 1990 (hereafter the "ADA").

The ADA prohibits discrimination, in employment, against a qualified individual, with a disability, due to the disability. 42 U.S.C. § 12112(a). The term "disability" refers to an individual's: 1) "physical or mental impairment that substantially limits one or more of the major life activities of such individual"; 2) record of such impairment; and/or 3) being regarded as having such impairment. 42 U.S.C. § 12102(2).

*FACTUAL ALLEGATIONS*

The following is a summary of the relevant factual issues asserted by the defendant's motion for summary judgment and not controverted by the plaintiff's response.

1. On August 12, 1991, the plaintiff met with Keith Daniel, Divisional Vice–President with Western–Southern Life Insurance Company (hereafter "Western–Southern") in Clearwater, Florida, to discuss employment with the company.

2. The next day, August 13, 1991, the plaintiff completed and signed an "Application for Employment" (hereafter the "Employment Application") and an "Application for Members Coverage" for insurance and health benefits (hereafter "Benefits Application"). The two (2) applications were sent to the defendant's home office in Cincinnati, Ohio.

3. On the Benefits Application the plaintiff stated that: 1) he had been treated or examined in the last five (5) years (question 7); 2) that the only treatment or examination was related to a throat spasm (Question 18); and 3) that he had not been treated for diabetes within the last five (5) years (Question 9).

4. The Benefits Application contained the following declaration, in relevant part: "I understand that any misstatements or omissions in the answers given in this application for life insurance and medical disability coverage are grounds for rejection or dismissal."

5. On September 16, 1991, the plaintiff signed a "Field Management Consultants Agreement" (hereafter the "Consultants Agreement") which indicated that the company could terminate the agreement, without notice, for "cause". The definition of cause included, but was not limited to, the provision of false or misleading information on the various applications and forms (i.e. personal history), including the intentional omission of facts and/or the falsification or destruction of records.

6. Plaintiff's "Personal History Statement" was completed, by telephone interview, on October 14, 1991. Therein, the plaintiff: 1) denied being under treatment or medication from a physician (Question 17); 2) denied having had any treatment or medication in the last five (5) years (Question 18); 3) denied having been advised to have electrocardiograms, x-rays, blood, urine or other kinds of medical tests (Question 20); and 3) denied ever having diabetes or sugar in his urine (Question 22).

7. On January 6, 1992, after becoming a District Sales Manager, the plaintiff signed a District Sales Manager's Agreement which contained the same cautionary language as the Consultant's Agreement regarding termination for cause.

8. In the summer of 1992, the plaintiff submitted an insurance claim to the defendant for reimbursement for cardiac treatment. The company in the process of investigating the claim, and following company policy, requested medical records

from the plaintiff's physicians to determine if the condition was pre-existing.

9. Review of the medical records, revealed that plaintiff had non-insulin dependent diabetes mellitus for at least (3) years, had a long history of hyperlipidemia and hypertriglyceridemia and was on medication for these conditions (records of Dr. Peebles and Dr. Goldsmith). This information was compared to the responses of the plaintiff on the Benefits Application and found to be inconsistent.

10. Based on this information, Robert Guenther, Assistant Manager for the Security Plan Department the investigating department, sent a memorandum on October 22, 1992, to Keith Daniel, Keller's immediate superior, providing the information without recommendation of termination. The memorandum reads as follows:

Mr. Keller was employed by Western–Southern on September 9, 1991. When he completed the Form 312 the only medical history that he admitted was he was seen at the Parman General Hospital for an apparent throat spasm with no date of service indicated. On the Personal History Statement completed on October 14, 1991, the only medical history indicated was treatment for the flu and for hemorrhoids in 1976.

Security Plan recently received a claim and in the course of our investigation we have determined that Mr. Keller has non-insulin dependent diabetes mellitus for at least three years and has a history of hyperlipidemia and hypertriglyceridemia and apparently for these conditions he has been on medication for approximately three years. None of this medical history was admitted on the Form 312 or the Personal History Statement. This matter is being referred to your attention for whatever action you deem necessary. If you have any questions, call me on line 1495. (Exhibit 3E to motion for summary judgment).

11. In Mr. Daniel's absence from the office, the memorandum was supplied to Mr. Robert Bodeker, Vice–President for the Eastern Region, and Mr. Daniel's superior. Mr. Bodeker asserts that he was primarily responsible for the decision to terminate the plaintiff and that the decision was made in accord with company policy, including the District Sales Manager's Agreement.

12. Mr. Daniel made a special trip to Tampa, Florida, on October 23, 1992, and gave the plaintiff notice of his termination.

13. The discharge of the plaintiff allegedly was consistent with the course of conduct normally followed by the defendant. At least fourteen (14) other employees were discharged between January 1991 and January 1993 for the same offense. Defendant asserts that there is no evidence that the company has ever, in similar circumstances, not terminated the offending employee. The defendant denies that the situation the plaintiff asserts as similar, the Sharpe incident, is similar to the plaintiff's situation.

14. In his answers to interrogatories filed in this case, the plaintiff admitted that he was treated for triglycerides and diabetes in 1988 for which he received prescriptions for Lopid and Diabeta.

15. Plaintiff alleges that at least a part of his disability is a heart condition, but Mr. Bodeker and Mr. Daniel both assert that they were not aware of the purported disability when the decision was made to terminate the plaintiff.

The plaintiff, in response to the motion for summary judgment, asserts the following additional factual allegations which are relevant to the consideration of the motion:

16. The plaintiff authorized the defendant, in August 1991, to obtain any of his past medical records, but no medical records were requested prior to May 1, 1992.

17. On May 2, 1992, the plaintiff was seen at the emergency room of Mease Hospital, Dunedin, Florida, for esophageal spasm and stomach pain.

18. On May 12, 1992, the plaintiff sought medical treatment from Dr. Michael Peebles for chest pain, epigastric pain and possible atherosclerotic cardiovascular disease. Thereafter, the plaintiff received various cardiologic testing, x-rays, cardio-

logic consultations, and bloodwork until June 23, 1992.

19. On June 1, 1992, the plaintiff underwent surgery on a major artery and electrocardiogram performed by Dr. Alan Goldsmith.

20. The defendant did not notify the plaintiff of any omission on the Benefits Application prior to terminating him on October 23, 1992.

The plaintiff also asserts that there is both circumstantial evidence and comparative evidence of discriminatory intent, which, the plaintiff believes to constitute disputed issues of material fact so as to defeat the motion for summary judgment and to require the case to proceed to trial.

The plaintiff's claim of circumstantial evidence is supported by the following "facts": 1) Mr. Guenther, of the Security Plan Department, recommended that the plaintiff be fired; 2) that the recommendation was accepted by Mr. Bodeker and Mr. Miller without question; and 3) that Mr. Guenther's recommendation was based on the plaintiff's heart condition and the potential that it would cost the company's self-funded insurance plan "a lot of money."

As to the comparative evidence argument, the plaintiff discusses a situation where an employee, Johnny Sharpe, allegedly, fraudulently witnessed customer signatures on an insurance application. The employee was allegedly assisted by another employee, Ron Goddaeus. Neither employee was discharged; however, the undisputed evidence is that both employees received a written reprimand. (Exhibit 4 motion for summary judgment).

*DISCUSSION*

■ Gary Keller is disabled within the meaning of the ADA. He suffers from a physical or mental impairment that substantially limits one or more of the major life activities and there exists a record of such impairment. Specifically, heart disease qualifies as a disability under the ADA. Cardiovascular impairments can qualify a person for disabled status. 29 C.F.R. § 1613.702(b)(1). The Code of Federal Regulations defines "working" as a major life

activity. See 29 C.F.R. § 1613.702(c). Additionally, Dr. Alan Goldsmith's May, 1992 diagnosis of Gary Keller with severe double vessel coronary artery disease establishes a record of the relevant impairment. Therefore, plaintiff should be afforded the protection of the ADA.

■ There are a series of burdens of proof to be considered by the Court in relation to a claim of discrimination pursuant to the ADA. Initially, the plaintiff has the burden of establishing a prima facia case of discrimination. The standard for establishing a *prima facie* case of disparate treatment has become known as the *McDonnell Douglas/Burdine* standard. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to prevail, the plaintiff must prove discriminatory intent by a preponderance of the evidence.

■ In order for the plaintiff to establish a *prima facie* case of disparate treatment under the *McDonnell Douglas* standard, four (4) elements must be proven:

1) That he is a member of a protected class under Title VII;

2) That he was qualified for the job from which he was dismissed;

3) That the misconduct for which he was dismissed was nearly identical to the misconduct of employees outside the protected class who were retained, and;

4) That sufficient direct and/or circumstantial evidence exists to infer a nexus or causal connection between the protected classification and the disparate treatment.

*Ibid*, 93 S.Ct. at 1824; *McDonald v. Santa Fe Trail Transportation Company*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir.1984); *McKeon v. Vaicaitis, Schorr, Richards, et al.*, 825 F.Supp. 290 (M.D.Fla.1993).

■ If Plaintiff makes out a prima facie case, the employer may then articulate some legitimate, nondiscriminatory reason for its

treatment of the employee. *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at at 1824. Upon such a showing by the Defendant, the burden then shifts to the Plaintiff to establish that the alleged non-discriminatory reasons expounded by the employer were not true reasons, but were mere pretext for discrimination. *Burdine,* 450 U.S. at 251, 101 S.Ct. at 1093, see also *Kirkpatrick v. Charter Hospital of Bradenton, Inc.,* 1991 WL 115771, 1991 U.S. Dist. LEXIS 9009, 418 Emp.Prac. Dec. (CCH) P40, 719 (M.D.Fla.1991).

Plaintiff meets the first prong of the *McDonnell Douglas* test because cardiovascular impairments can qualify an individual for disabled status under the ADA. 29 C.F.R. § 1613.702(b)(1), See *Montgomery Ward & Co., Inc. v. Bureau of Labor,* 42 Or.App. 159, 600 P.2d 452, 453 (1979).

Plaintiff Keller was qualified for the job from which he was dismissed, thus satisfying the second prong. In fact, Keller was promoted to District Sales Manager and in January of 1992 he was ranked fifth in production among all District Sales Managers in the nation. Additionally, Gary Keller ranked second among all District Sales Managers for net first year commissions during the month before Western–Southern fired him. Western–Southern does not dispute the fact that Mr. Keller was qualified for the job from which he was terminated.

■ Whether the alleged misconduct for which Mr. Keller was dismissed was nearly identical to misconduct of other employees outside the protected class who were retained, notwithstanding their misconduct, constitutes a genuine issue of material fact. Western–Southern's policy is that any employee who falsifies information on an application for life insurance is to be terminated. Johnny Sharpe, a sales manager for the Company's Tampa office, fraudulently witnessed customer signatures on an insurance application. However, notwithstanding this ostensible violation of the strict company policy, Mr. Sharpe was *not* terminated. See Deposition of Keith Daniel, pages 40–41. The only apparent difference between Mr. Keller's alleged fraudulent conduct and Mr. Sharpe's is that Mr. Keller suffers from a medical condition which is costly to the defendant corporation, whereas Mr. Sharpe does not. The Court believes a genuine issue of material fact exists on this point and that plaintiff has carried his burden of producing sufficient evidence on this third prong of the *McDonnell Douglas* analysis. Thus, a jury is in the best position to weigh this evidence of disparate treatment in order to determine the true reason why Plaintiff was terminated.

There is sufficient direct and/or circumstantial evidence to infer a nexus or causal connection between the protected classification and the disparate treatment, thus plaintiff has satisfied the fourth prong of the *McDonnell Douglas* test. One of Robert Guenther's subordinates, Sherry Good, notified him that an employee named Gary Keller was running up a large tab on the Company's self-funded medical plan. See Deposition of Robert Guenther, pages 35–38. It was one of Mr. Guenther's duties to contain costs, including containing the cost of employees' medical bills. See Deposition of Robert Guenther, page 16 at Exhibit "B." Keith Daniel, the plaintiff's immediate supervisor, admitted that Mr. Guenther's Department, the Security Plan Department, had some input into the decision to fire Mr. Keller, and that Mr. Guenther was involved in the decision to fire the plaintiff. See Deposition of Keith Daniel, pages 28–29 at Exhibit "G." Drawing all inferences from these underlying facts in favor of the non-moving party, Mr. Keller, the Court finds that plaintiff has made out a prima facie case of discrimination under the ADA. Therefore, we turn to the stated reasons for termination as stated by the defendant corporation in it's motion.

■ Western–Southern's position is that the plaintiff was terminated because he falsified or provided misleading information on a Personal History Statement or Application for Members Coverage and that any employee who does so is terminated regardless of that person's performance. For the reasons stated in the fourth prong of the above *McDonnell Douglas* analysis, the Court finds that a jury could conclude that Western–Southern's stated reason for firing Keller was a pretext for firing him due to his expensive medical condition caused by his heart

disease. A genuine issue of material fact exists, and reasonable minds could differ, as to the actual reason why Western–Southern terminated Mr. Keller. Accordingly, it is

**ORDERED** that the motion for summary judgment (Docket No. 27) be **DENIED.**

**DONE and ORDERED.**