John SHORT, Plaintiff,

v.

IMMOKALEE WATER & SEWER DISTRICT, Defendant.

No. 93–350–CIV–FTM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

June 5, 1995.

Donald Isaac, Florida Rural Legal Services, Fort Myers, FL, Douglas L. Wilson, Wilson Law Firm, Naples, FL, for John Short.

John Short, Immokalee, FL, pro se.

Daniel Woolslair Sheppard, Henderson, Franklin, Starnes & Holt, P.A., Ft. Myers, FL, for Immokalee Water & Sewer Dist.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Docket Nos. 31–34) and Plaintiff's Response and Request for Oral Argument (42–44).

### BACKGROUND

Plaintiff, SHORT, has filed a complaint against the defendant, Immokalee Water and Sewer District, alleging racial discrimination under 42 U.S.C. § 2000e (Title VII) and 42 U.S.C. § 1981.

In order to fully evaluate the Defendant's motion for summary judgment, it is this Court's belief that a thorough recitation of the relevant facts is required. Plaintiff is an African–American who was hired in July of 1989 as the supervisor of the Immokalee sewer department plant and field. (Docket No. 34, at 59). The "chain of command" for employees at the plant was quite informal, with there being no apparent job titles or descriptions for many of the plant's employees. But on occasion, it was necessary for Plaintiff to give directions and require assistance of his fellow plant workers in order to ensure that the plant was being correctly maintained.

Plaintiff had numerous confrontations with many of the other employees at the plant which led to severe morale problems throughout the plant. Part of this problem appears to have stemmed from the fact that Plaintiff felt that the other employees did not respect the authority of his position. As a result, friction was created between Plaintiff and other employees, leading to a series of complaints to upper management of the sewer plant.

Two months prior to the termination of Plaintiff, the Defendant brought in Mr. Hayes to examine and oversee plant activity. Mr. Hayes's job was to try to help solve some of the problems that were taking place in the district. (Docket No. 45 at 8). Based on his observations of the Immokalee plant, and the actions of Plaintiff in particular, Mr. Hayes decided to terminate Plaintiff in July of 1991. In an affidavit given by Mr. Hayes, he expressed the beliefs that:

> Short was unable to sustain acceptable levels of personal interaction with his coworkers. Short was unable to maintain good relationships with the company employees and office staff. Short could not get along with the majority of other employees. *Id.* at 21, 22.

In essence, it was Mr. Hayes's belief that Plaintiff was the root of most of the personnel problems which occurred at the plant; and, that fact, combined with his belief that Plaintiff lacked the proper managerial skills necessary to perform as plant supervisor, led to Mr. Hayes's decision to terminate Plaintiff. *Id.* at 49.

Plaintiff raised three incidents of discrimination in his complaint:

1. Plaintiff claims he was discriminated against because the other non-African-American supervisors had the power to give directions to employees while he was specifically limited in his power to give orders. However, this limitation was implemented and enforced only by the District Manager of the plant, James Coker, who was later fired for lack of managerial skills. *Id.* at 69. This claim centered around the fact that Mr. Coker told Plaintiff that he was in charge of a certain employee (Garcia) and then, the District Manager instructed Garcia to answer only to him and not Plaintiff. Thus, tension arose between Plaintiff and the employee and Plaintiff points to this incident as the beginning of the discriminatory practices against him. "They (his co-workers) didn't like me because—basically, because I was a Negro." *Id.* at 76.

2. Plaintiff also alleges that another instance of discrimination occurred when he reported to Mr. Coker and to upper management about another employee's supposed lying and falsification of reports; yet, no disciplinary action was taken against the employee. Plaintiff asserts that the inaction of upper management was in some way related to a scheme to have Plaintiff terminated and replaced with a white supervisor. *Id.* at 78.

3. Finally, Plaintiff alleges that he was discriminated against by the board of the plant because he was never formally invited to attend and give a report at a board meeting, while the other two supervisors at the plant had been given the opportunity to attend board meetings. *Id.* at 80. It is also apparent from the record that Plaintiff never made any request to Mr. Coker or to a board member to attend any of these aforementioned board meetings.

Plaintiff also points out two specific occurrences which may shed some light on the racial attitude of Mr. Hayes towards African-Americans. *Id.* at 88–90. Plaintiff asserts that: 1) Mr. Hayes's son was killed by some blacks which may have caused him to "have a hang up" against blacks and 2) that on one specific morning Mr. Hayes exclaimed to an employee named Chris (who was later fired by Plaintiff) that he was "doing some work for some niggers and, you know how niggers are, you can't never please them". *Id.* at 90. Chris allegedly related this story to Plaintiff and to two other employees (Carlos Appontay and Clyde Newton) at the plant. Plaintiff asserts that these two occurrences create a genuine issue of fact as to whether the decision of Mr. Hayes to terminate Plaintiff was racially motivated.

### STANDARD OF REVIEW

Summary judgment should only be entered when the moving party has sustained

its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In *Celotex,* the United States Supreme Court held:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

"It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993), citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, to withstand a motion for summary judgment, the plaintiff need only show that a genuine question exists as to whether the reason for the decision was intentional discrimination on an issue for which he carries the burden of persuasion. *Howard v. BP Oil Company Inc.,* 32 F.3d 520, 524 (11th Cir. 1994).

In *Earley v. Champion Int'l Corp.,* 907 F.2d 1077 (11th Cir.1990), the court recognized that the summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 1080 (citing *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). The court further stated that "[s]ummary judgments for defendants are not rare in employment discrimination cases" and that if a plaintiff has failed to carry his burden of proof by offering evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 1080–1081.

### ANALYSIS

■ "On a motion for summary judgment in a race discrimination complaint, Plaintiff has the initial burden of establishing a prima facie case of discrimination." *Clemons v. Hardee County School Board,* 848 F.Supp. 1535 (M.D.Fla.1994). The standard for building a prima facie case of disparate treatment has been made clear by what is called the *McDonnell Douglas/Burdine* standard. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must prove discriminatory intent by a preponderance of the evidence in order to prevail. If the plaintiff meets that burden, the employer may then articulate some legitimate, nondiscriminatory reason for its treatment of the employee. *McDonnell Douglas* at 802, 93 S.Ct. at 1824. Plaintiff then again has the burden to establish that the legitimate, non-discriminatory reasons expounded by the employer were not true reasons, but were mere pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *See also Kirkpatrick v. Charter Hospital of Bradenton, Inc.,* 1991 U.S. Dist. LEXIS 9009; 418 Emp.Prac.Dec. (CCH) P40, 719, 1991 WL 115771 (M.D.Fla.1991).

■ The *McDonnell Douglas* line of cases established a four (4) part test framework for a plaintiff to establish a *prima facie* case: (1) that he is a member of a protected class under Title VII; (2) that he was qualified for the job from which he was dismissed; (3) that the misconduct for which he was dismissed was nearly identical to the misconduct of employees outside the protected class who were retained, and; (4) that sufficient direct and/or circumstantial evidence exists to infer a nexus or causal connection between the protected classification and the disparate treatment. *Id.* at 801–02, 93 S.Ct. at 1824;

*McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir. 1984); *McKeon v. Vaicaitis, Schorr, Richards, et al.,* 825 F.Supp. 290 (M.D.Fla.1993).

This Court finds that Plaintiff meets the four (4) requirements established by the *McDonnell Douglas* line of cases to create a prima facie case of racial discrimination.

1. Plaintiff is a member of a protected class (African–American).

2. Plaintiff appears to have been qualified for the job (licensed plant operator, previous work experience).

3. Plaintiff has shown that there were members of an unprotected class who may have been treated more favorably by management in similar workplace activities. Plaintiff has shown that he was not asked to attend board meetings which the other two supervisors of the plant had a chance to attend. Plaintiff also has demonstrated that he was given less power to manage than the other supervisors in the plant. Lastly, Plaintiff has shown that he was terminated, while other non-African-American employees who were also disruptive and lacked personnel skills were retained.

4. Plaintiff has shown that a sufficient nexus may exist between the actions of the employer and the race of Plaintiff in order to warrant a trial. Plaintiff was terminated and replaced by a white employee. Mr. Hayes, who recommended the termination of Plaintiff, may hold a racial bias against African–Americans employees.

Plaintiff has demonstrated to this Court that a genuine issue of fact exists in relation as to whether Plaintiff was a victim of disparate treatment. Based on the record, this Court finds that there is a genuine issue as to whether the actions of Mr. Hayes and the Board of Immokalee Sewer were governed by racial motives. It has been sufficiently asserted that Mr. Hayes may garner some potentially discriminatory feelings towards the racial classification of Plaintiff.

Furthermore, Plaintiff has also established that a genuine issue of fact exists about whether the reasons asserted for Plaintiff's termination are legitimate and non-discriminatory. It is unclear from the record whether upper management viewed Plaintiff as a supervisor with managerial control over other employees, or merely as a subordinate employee who required minimal managerial skills. This is an important distinction because Defendant is alleging that Plaintiff was terminated because he lacked the requisite managerial skills demanded his by supervisory position. Thus, Plaintiff has established a genuine issue as to whether the reasons given for Plaintiff's termination were truly legitimate and non-discriminatory, and not mere pretext for discriminatory conduct.

The evidence presented by Plaintiff is "significantly probative" on the issue of disparate treatment, and does not appear to be "merely colorable". *Earley* at 1080–1081. It is not the role of this Court to decide how credible a witness is or to weigh the evidence; this Court need only decide whether a prima facie case for disparate treatment has been established by Plaintiff. Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment (Docket No. 31) be **DENIED** and that Plaintiff's request for oral argument (Docket No. 43) be **DENIED.**

**DONE and ORDERED.**