**Charlotte CROMAN, Plaintiff,**

v.

**MANHATTAN COMMUNITY COLLEGE, Defendant.**

**No. 84 Civ. 5492 (CBM).**

United States District Court,
S.D. New York.

Aug. 7, 1987.

---

Joseph T. Schmidt, Woodhaven, N.Y., for plaintiff.

Peter L. Zimroth, Corp. Counsel of the City of New York by Paul Marks, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

Plaintiff commenced this action on August 2, 1984 pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* The complaint alleged that plaintiff Charlotte Croman was not appointed to be Associate Dean of Faculty at defendant Borough of Manhattan Community College because of her sex (female) and her race (white). Plaintiff dropped her claim of racial discrimination at trial. (Transcript at 194.) A bench trial before this court commenced on April 29 and ended on May 18, 1987. For the reasons stated below, the court finds that plaintiff has not met her burden of proving by a clear preponderance of the credible evidence that she was denied the appointment she sought because of her gender.

## FINDINGS OF FACT

Plaintiff Charlotte Croman, a white woman, is a member of the faculty at defendant Borough of Manhattan Community College ("BMCC"), a position she has held since 1964. Plaintiff has a B.S. degree from New York University, a Master's Degree in Education from Southern Connecticut State College, a Master's Degree in Psychology from Hunter College, and a Ph.D. in Theater Arts from New York University. Plaintiff was hired by BMCC as an instructor in 1964 and was promoted to the position of Assistant Professor in 1966. In 1967, she received tenure. She was then promoted to Associate Professor in 1968 and to Full Professor in 1972.

Myron Pollack served as Dean of Faculty at BMCC from September, 1972 through August, 1974. When Pollack was hired in 1972, the academic program of BMCC was, as a result of the "open admissions" policy of the New York City Board of Higher Education, in a state of transition. One of the ways in which this transitional period manifested itself was the change of the BMCC student body from predominantly white to predominantly black.

As Dean of Faculty, one of Dean Pollack's primary duties was the development of a remedial program, which was made necessary, in part, by the open admissions policy. The Board of Higher Education and the Chancellor of the City University of New York had directed BMCC to establish such a program. In developing the required remedial program, Dean Pollack sought to hire an Associate Dean of Faculty for Instruction. That person was to share the overall responsibilities associated with the academic program of the college and to integrate the remedial program into the entire curriculum. The position was advertised in the *New York Times* on September 24, 1972. Dean Pollack also sought to hire an Assistant Dean of Faculty who would be responsible for the actual day-to-day operation of the remedial program.

In the fall of 1972, Dean Pollack asked Dr. Frances Minor, a white woman, to apply for the position of Associate Dean of Faculty for Instruction. Dean Pollack had known and worked for several years with Dr. Minor when both were members of the faculty at New York University. Dr. Minor submitted a formal application to Dean Pollack.

Dr. Minor holds a B.S. degree from New York University and a Master's Degree and a Doctor of Education Degree, both from Teacher's College at Columbia University. She began teaching at New York University in 1959, was promoted to associate professor with tenure in 1972, and became a full professor in 1974. Dr. Minor also participated for two years in a program at Yale University in which she helped community college students with reading and writing.

After Dr. Minor submitted her application, she was interviewed by President Draper. By letter dated October 27, 1982, President Draper offered the Associate Dean position to Dr. Minor. Dr. Minor did not accept the offer because the salary was

not to her satisfaction and because the position was described as being of a "temporary nature." By letter dated November 2, 1972, President Draper reiterated the offer, offering the same salary and explaining that the "temporary nature" language did not refer to her position. Dr. Minor again declined because she was not satisfied with the salary and because she would be unable to begin work at BMCC in February, 1973, as required by the letter.

In response to a posting at the College, plaintiff applied to President Draper by letter dated October 27, 1972 for the position of Associate Dean of Faculty for Instruction. After advising plaintiff by letter dated October 31, 1972, that she would be considered for the position, Dean Pollack, in a telephone conversation of November 16, 1972, informed plaintiff that she had been rejected for the position. That rejection was confirmed in writing by letter dated November 22, 1972. In that letter, Dean Pollack stated that plaintiff failed to meet the requirements for the Associate Dean position that were enumerated in an advertisement which appeared in the *New York Times* on September 24, 1972. Dean Pollack wrote that plaintiff's record showed "a lack of expertise in the areas of statistical analysis and research design."

After the November 22, 1972 rejection, plaintiff neither asked Dean Pollack to reconsider his decision nor communicated with him regarding the Associate Dean position. Furthermore, plaintiff never reapplied for the Associate Dean position after her rejection in November, 1972.

In the spring of 1973, Dean Pollack formed a faculty search committee composed of several faculty members, the purpose of which was to recommend a person to fill the position of Associate Dean of Faculty for Instruction. Of the 36 applications screened by Dean Pollack, the committee interviewed eight to ten candidates, including Dr. Frances Minor. On May 17, 1973, the committee voted unanimously to offer Dr. Minor the position. By letter dated June 5, 1973, President Draper again offered the Associate Dean position to Dr. Minor, this time at a higher salary. Dr.

Minor, however, felt that she could not accept the appointment without tenure, and again declined the offer.

After Dr. Minor declined President Draper's offer, a second faculty search committee was formed. This committee was composed of five men and one woman. Plaintiff's application was not brought before this committee, and at that time plaintiff did not know that the position was still open. Dr. Eric James, former Dean of the College testified that he believes that President Draper did not want Dr. Croman to have the position because she was a woman. There is statistical evidence that discrimination against women faculty members in promotions and salary increases existed generally at BMCC at that time.

On July 31, 1973, the committee interviewed Dr. Mervyn Keizer, a black male, and voted unanimously to offer him the position of Associate Dean. Dr. Keizer holds a doctorate from Harvard and has taught at Federal City College in the District of Columbia. At Federal City College, which had a student population similar to that of BMCC, Dr. Keizer established a successful remedial program. Dr. Keizer's appointment at BMCC, which was without tenure, began September, 1973, and ended in June, 1974.

Both Drs. Minor and Keizer were qualified for the position of Associate Dean of Faculty for Instruction. The offers to both applicants were legitimate offers, and were made in good faith. Defendant hired Dr. Keizer in part because he is black, and the student body at the time was becoming primarily black.

On October 2, 1973, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that defendant discriminated against her because of her sex. In that charge, plaintiff made no claim based on race or color.

Thereafter, on October 26, 1973, plaintiff filed a complaint with the New York State Division of Human Rights ("State Division") in which she also claimed that she was discriminated against because of her sex. On December 3, 1973, plaintiff

amended her State Division complaint to add a claim of discrimination on account of her race and color. The EEOC deferred to the State Division for investigation of plaintiff's charges and the State Division subsequently issued a probable cause determination.

At State Division hearings conducted on October 16, 17, and 18, 1978, and January 3, March 28, and May 4, 1979, plaintiff's claims were adjudicated before Administrative Law Judge Matthew Foner. In his decision dated July 16, 1979, Judge Foner found that defendant had not discriminated against plaintiff on the basis of sex, color, or race. Judge Foner's decision was affirmed on August 8, 1980 by the New York State Human Rights Appeals Board.

On July 16, 1984, the EEOC issued a "Right to Sue" letter to plaintiff, and on August 14, 1984, plaintiff commenced this action.

### Conclusions of Law

In a Title VII sex discrimination case, the basic allocation of burdens and order of presentation of proof are as follows.

First, plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in doing so, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employee's rejection. Third, once defendant articulates a legitimate, non-discriminatory reason, plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by defendant were not its true reasons, but were merely a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207, 215 (1981).

■ As the court ruled at trial, plaintiff met her initial burden of presenting a *prima facie* case of sex discrimination by showing that she applied for an available position for which she was qualified, but was rejected under circumstances that give rise to an inference of unlawful discrimination. *See Id.* She did this by showing that she was rejected for a position that she was at least minimally qualified for, in the sense that her doctorate, years of experience at BMCC, and other qualifications were sufficient to warrant serious consideration for an administrative position such as the Associate Deanship. In addition, the testimony of Dean Eric James and the statistical evidence plaintiff presented regarding discrimination against women at the College in general supported an inference of gender discrimination.

■ The court also finds that defendant met its burden of articulating some legitimate, nondiscriminatory reason for Croman's rejection through the testimony of Dean Pollack that Croman was rejected because she was not qualified for the Associate Deanship.

■ However, plaintiff has failed to meet her ultimate burden of proving that defendant's articulated, legitimate, non-discriminatory reason for her rejection was a pretext for unlawful discrimination based on sex, or that she was not appointed as Associate Dean because she is a woman. Defendant showed that it avidly recruited and offered the position in good faith on two occasions to a qualified woman, Dr. Francis Minor, who declined the offer.

Defendant then offered the position to Dr. Keizer, a qualified black male, who accepted the position. Defendant did not discriminate against plaintiff because she is a woman by hiring Dr. Keizer.

### CONCLUSION

Plaintiff's complaint is dismissed because she has failed to prove by a fair preponderance of the credible evidence that she was denied the position of Associate Dean because of her gender or that defendant's proffered reason for not promoting her was a pretext for discrimination.