959 F.2d 231
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
TECHALLOY MARYLAND, INC., Defendant-Appellee.
 No. 91-1027.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 5, 1991
Decided: March 31, 1992
 
 ARGUED: Lamont Navarro White, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.
 Paul B. Lang, NILES, BARTON & WILMER, Baltimore, Maryland, for Appellee.
 ON BRIEF: Donald R. Livingston, Acting General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Equal Employment Opportunity Commission (EEOC) appeals from the district court's entry of summary judgment in favor of Techalloy Maryland, Inc. The EEOC argues that the district court erred because there was a genuine issue of material fact as to whether Techalloy's stated reasons for firing Joyce Lake were pretexts for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. We find no error and affirm.
 
 
 2
 Joyce Lake formally served as Techalloy's quality assurance manager from September 1980 through 1983.[1] In 1983, the duties of the position were separated into the newly created positions of director of quality assurance and director of quality control. Mrs. Lake was made the director of quality assurance. Brian Lewis, who since his hiring in July 1980 had served as a laboratory technician under Mrs. Lake's supervision, was named the director of quality control.
 
 
 3
 In January 1984, John Campbell became Techalloy's Vice President and General Manager. Campbell decided that the company could save money without sacrificing efficiency by combining the positions of director of quality assurance and director of quality control. On that account, in February 1984, Mrs. Lake was discharged, and on March 1, Lewis was given the combined position.
 
 
 4
 The EEOC brought suit against Techalloy alleging that Techalloy discriminated against Mrs. Lake because of her sex. The district court granted summary judgment in favor of Techalloy, and the EEOC appeals that decision.
 
 
 5
 The basic allocations of burden and order of presentation of proof in a Title VII case alleging discriminatory treatment are:
 
 
 6
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 7
 Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted).
 
 
 8
 We will assume, as did the district court, that Mrs. Lake established a prima facie case. Techalloy then met its burden of articulating a legitimate nondiscriminatory reason for its decision. Campbell retained Lewis instead of Mrs. Lake because he believed Lewis was more qualified for the job. Campbell stated that while Lewis and Mrs. Lake were equivalent as to general laboratory experience, education, and documentation, Lewis was "vastly superior" in terms of "very specific industrial experience relating to analytical techniques, various pieces of apparatus, [and] field experience in relating [sic] job activities." He based his decision in part on the fact that Lewis had four years of fundamental experience in many aspects of analytical techniques at General Electric and had served as a coordinator for construction engineering and certification activity relating to the welding of piping for nuclear applications at Brown and Root.
 
 
 9
 Because Techalloy articulated a legitimate nondiscriminatory reason for the firing decision, the EEOC was then required to produce evidence that Techalloy's stated reason was a pretext for discrimination. The EEOC attempts to meet this burden by showing that Mrs. Lake's qualifications were "manifestly superior" to Lewis's, thereby establishing that Campbell's articulated reason for his decision was pretextual.[2]
 
 
 10
 The record indicates that both Lewis and Mrs. Lake apparently were qualified for the job. Mrs. Lake received an associate's degree with a major emphasis in chemistry and math from Essex Community College. In addition, she had attended the University of Maryland for one year and had completed a welding course. Finally, she had performed the combined job from 1980 through 1983 and according to her supervisor at the time her performance was "fine." Since 1983, after the responsibilities of the position were split, she had served as the director of quality assurance.
 
 
 11
 Lewis had attended the University of North Carolina for two years, majoring in psychology. He had four years' experience as a construction engineering technician at Brown & Root and four years' experience as a nuclear lab technician at General Electric. Since 1983, he had served as the director of quality control at Techalloy.
 
 
 12
 Given the fact that both individuals were qualified for the position, the mere fact that a man was picked instead of a woman is insufficient to establish a case of sex discrimination. The EEOC has failed to produce probative evidence that Techalloy's proffered reason for its employment decision was pretextual or based on Lake's sex. In Campbell's judgment, Lewis was the better choice because of the experience he had gained at General Electric and Brown and Root.
 
 
 13
 Even if minds could differ on which candidate was the better choice, Mrs. Lake certainly was not so superior to Lewis, if superior at all, that Campbell's opinion that Lewis was better qualified can be considered a mere pretext for discrimination.
 
 
 14
 Techalloy was entitled to summary judgment because the EEOC failed to produce probative evidence that Techalloy's proffered reason for its termination decision was pretextual or based upon Mrs. Lake's sex. See EEOC v. Clay Printing Co., No. 91-2576, slip op. at 14 (4th Cir. February 5, 1992).
 
 
 15
 The district court's judgment is accordingly
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 She had been performing the duties of the position since March 1980
 
 
 [2]
 The EEOC also argues that a disputed material issue of fact exists as to whether or not Campbell interviewed Lake to discuss her qualifications. In his deposition, Campbell stated that, after his promotion to Vice President and General Manager in January 1984, he discussed with them the qualifications of all of the managers reporting to him. Mrs. Lake, by affidavit, stated that she never had any conversation with Campbell concerning her qualifications. While this does establish a dispute as to a fact, it is not material since it is not evidence of any discrimination based on Mrs. Lake's sex. Campbell did not claim that he denigrated the qualifications of Mrs. Lake because of any conversation with her. As the district court aptly pointed out, the best that plaintiff has shown was that Techalloy might have retained Mrs. Lake rather than Lewis but for Campbell's failure to more thoroughly evaluate Mrs. Lake's qualifications. This is yet not evidence, however, of any discrimination against Mrs. Lake based on her sex