UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-20007
Summary Calendar
_____

HENRY J. HARRINGTON, JR.,

Plaintiff-Appellant,

versus

SUN LIFE ASSURANCE COMPANY OF CANADA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-93-1908)
_____

November 7, 1995

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIUM:[1]

Henry J. Harrington challenges an adverse judgment, following a jury trial, in his age discrimination suit, grounding error on the exclusion of statistical and anecdotal evidence.  We need not address his contention that the general category of statistical and anecdotal evidence, which he sought to admit, is admissible in ADEA[2] cases, because we conclude that, even assuming error, it was

---

[1]    Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that rule, the court has determined that this opinion should not be published.

[2]    Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*

harmless in light of the minimal value of the evidence compared to the overwhelming evidence that the employer's stated rationale for dismissing Harrington was the true motivation for its actions. Accordingly, we **AFFIRM**.

I.

Harrington was employed by Sun Life Assurance Company of Canada. Since receiving a promotion in 1984, he served as the Group Manager of the company's Houston Group Office, and was responsible for hiring and training Sun's sales force in Houston and for running the Houston Group Office.

Harrington was dismissed in June 1991 by Sun vice president James McNulty, who told Harrington that the decision was based, *inter alia*, on his poor performance and attitude. This was the nondiscriminatory reason proffered by Sun at trial as well.

At trial, Harrington, who was 47 years of age when terminated, sought to introduce statistical and anecdotal evidence purporting to demonstrate at Sun a pattern of discrimination based upon age. None of this evidence was based upon, or directly illustrative of, Harrington's employment experience; and the court ruled it irrelevant and prejudicial. Specifically, the court noted that it was troubled by the fact that, among the 14 people to be characterized as examples of a pattern of age-motivated dismissals, were four to six who had taken early retirement. After visiting the question several times, and extensively, during the trial, the court noted that exclusion of unduly prejudicial evidence was within its discretion and ruled that it would not admit it.

At the conclusion of the five-day trial, the jury found, in response to a special interrogatory, that Sun's stated nondiscriminatory reason for terminating Harrington's employment was not a pretext; judgment was entered for Sun.

## II.

Harrington asserts that the trial court erroneously excluded evidence.[3]  We review evidentiary rulings for abuse of discretion. *Harpring v. Continental Oil Co.*, 628 F.2d 406, 410 (5th Cir. 1980), *cert. denied*, 454 U.S. 819 (1981); Fed. R. Civ. P. 103.  Of course, a finding of harmless error obviates the need to consider whether error occurred.  *See* Fed. R. Evid. 103; Fed. R. Civ. P. 61.

As is well known, the plaintiff in an age discrimination action must first make a prima facie case; then, if the employer articulates a legitimate nondiscriminatory reason for terminating his employment, he must counter it with evidence that the reason is untrue and a pretext for discrimination.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The shifting described in *Burdine* is useful primarily for considering judgments as a matter of law.  Once the jury was given the case, the question was simply whether Harrington satisfied his burden of demonstrating, by a preponderance of evidence, that his dismissal was illegally motivated by age.

Upon review of the evidence and Harrington's arguments for admitting the excluded evidence, we conclude that the excluded

---

[3]    The EEOC's motion for leave to file an untimely amicus brief is **GRANTED.**

- 3 -

evidence could not have meaningfully buttressed Harrington's case, and that Sun's evidence that Harrington was dismissed because he failed to live up to Sun's changing needs was overwhelming. Therefore, as shown below, we conclude that the error, if any, was harmless.

Some of the excluded evidence dealt with six ADEA actions against Sun. Harrington asserted that, by introducing, *inter alia*, Sun's answers to interrogatories filed in those actions, he could establish willful or reckless disregard for the ADEA's requirements. But, Sun, of course, was willing to stipulate its awareness of the ADEA's provisions.

Harrington also attempted to enter evidence regarding the above-noted early retirement agreements, which the court excluded because none of them related directly to Harrington.

Finally, Harrington was not allowed to present testimony by two witnesses concerning their employment at Sun and their belief that it reflected age discrimination. The court ruled, after hearing the testimony outside the jury's presence, that the evidence was inadmissible; it had earlier so ruled.

Harrington did introduce evidence that his past performance with Sun had garnered him awards and positive feedback from supervisors. This evidence included a 1990 letter referring to his effort to increase area sales, but which did not refer to his personal sales.[4] Harrington also offered evidence that profits in

---

[4]    According to Sun's evidence, Harrington had only one new case in the third quarter of 1990.

the Houston group increased in 1990, and presented testimony by a former Sun employee that Harrington's attitude and work ethic were praised at Sun.

But, Sun's position at trial was that Harrington's work ethic and attitude, particularly regarding his personal sales responsibilities, were poor at the time of his June 1991 dismissal. Harrington's evidence, because it bore on his performance either before McNulty was hired in March 1990 to improve Sun's profitability, or on aspects of Harrington's performance other than those McNulty found paramount in his effort to revamp Sun's profitability, did not undermine Sun's proffered reason for termination. Harrington's lack of success in meeting McNulty's standards, adopted to make management more responsible for the sales generated by their departments and for personal sales performance, was not refuted by Harrington's evidence -- either the admitted or the excluded.

By contrast, Sun introduced extensive evidence that Harrington's work was not satisfactory at the time of his dismissal. McNulty testified at length about his plan for the company, and why Harrington's performance was unacceptable given that plan to make Sun more profitable. Moreover, Harrington admitted on cross that his personal sales had decreased; that his office's proposal output had dropped, as had its generation of prospects; that he had not considered making out-of-the-office calls to be a significant priority; and that his supervisor was

concerned about Harrington's low personal production, and had notified Harrington of this concern.

                            III.

    In sum, we conclude that, on the record from this jury trial, the error, if any, was harmless.  Accordingly, the judgment is

**AFFIRMED.**