

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2002

# Miller v. DE Probation Parole

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4001

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Miller v. DE Probation Parole" (2002). *2002 Decisions.* Paper 455.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/455

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 01-4001

IVANHOE F. MILLER

v.

STATE OF DELAWARE PROBATION AND PAROLE

(Delaware No. 98-cv-553)


IVANHOE F. MILLER

v.

STATE OF DELAWARE PROBATION AND PAROLE

(Delaware No. 99-cv-565)


Ivanhoe Miller,
Appellant


On Appeal from the United States District Court
for the District of Delaware
(Civil Actions Nos. 98-5453-GMS and 99-565-GMS)
District Court: Hon. Gregory M. Sleet

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 15, 2002

Before: McKEE, WEIS and DUHE, Circuit Judges.

(Opinion Filed: July 29, 2002)

OPINION

McKEE, Circuit Judge.

Ivanhoe F. Miller appeals from the district court's grant of summary judgment in favor of the State of Delaware, Department of Probation and Parole, on his employment discrimination and retaliatory discharge claims. For the reasons that follow, we will affirm.

I.

Miller began his employment with Delaware's Department of Probation and Parole, a division of the Department of Correction ("DOC"), on October 1, 1994. During the summer of 1997, Miller lost his department issued weapon; a .40 caliber semi-automatic handgun. He initially claimed that the weapon had been stolen from his apartment on Saturday, July 19, 1997, by a female guest named Linda Wilson. Miller claimed to have conducted an exhaustive search of his apartment, his car, and his office locker, but the weapon was not found. Miller then returned to his apartment and telephoned a psychic in an effort to locate the weapon. He then called a co-worker, Kathy Schaap, and told her he had lost his gun. Schaap notified Miller's supervisor, Phyllis Ryan. Ryan contacted Miller and instructed him to report the lost weapon to the police.

Miller did so, and Officer Rob Joseph responded and interviewed Miller at Miller's apartment that same Saturday evening.  During the interview, Miller said that he believed that Wilson had stolen the weapon.  Officer Joseph was suspicious of Miller's behavior throughout the interview and had doubts that Wilson was as involved as Miller claimed.  Accordingly, Officer Joseph contacted Ryan, who informed him that a Probation and Parole Officer must carry his or her duty weapon during field work, and that Miller had not performed field work in the two weeks prior to the incident.

On Sunday, July 20, 1997, Officer Joseph again interviewed Miller.  During this second interview, Miller changed his story.  This time, he said that the weapon had been stolen from the trunk of his automobile at a supermarket parking lot two weeks earlier.  Miller subsequently claimed that he told the second version in order to end the questioning.  Miller also claimed that the police coerced him into lying during the second interview.  However, Miller was not placed under arrest, placed in handcuffs or physically abused during the inquiry, and he drove his own car to and from the interview.

Shortly after he reported the loss, Miller was suspended without pay.   The State of Delaware subsequently prosecuted Miller for falsely reporting an incident. However, he was acquitted and ultimately had his arrest record expunged.  After his acquittal, Miller filed a charge of discrimination with the EEOC.  He was thereafter discharged by the DOC, and then filed a second charge with the EEOC alleging retaliatory discharge.

## II.

On September14, 1998, Miller filed a pro se complaint alleging that he had been suspended because of his race in violation of Title VII.   The complaint also alleged various state law causes of action.  On August 20, 1999, Miller filed a counseled complaint alleging that his termination was in retaliation for his complaint about the DOC's discriminatory conduct, in violation of Title VII and 42 U.S.C.   1981.   The district court consolidated both cases, and eventually granted summary judgment in favor of the defendant.  Miller's motion for re-argument was thereafter denied, and this appeal followed.

## III.

Miller, who is an African-American, alleges that he was suspended because of his race and that white officers who were similarly situated received substantially more lenient sanctions for similar conduct.   "Title VII prohibits an employer from engaging in race . . . discrimination against an employee."  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 318 (3d Cir. 2000).  In order to establish a claim under Title VII, Miller must first establish a prima facie case of discrimination.  "To do so he must offer sufficient evidence that he is:  (1) a member of the protected class, (2) qualified for the position he sought, and (3) nonmembers of the protected class were treated more favorably."  Id. at 318-19 (citation omitted).  "Once a plaintiff under Title VII establishes a prima facie case, the employer must come forward with a legitimate, non-discriminatory reason for the adverse employment decision.  Id. at 319 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981)).  "If the employer is able to proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination."  Id. at 319 (citation omitted).

To demonstrate pretext, the plaintiff must convince the fact finder both that the employer's reason was false and that the discrimination was real.  Jones v. School District of Philadelphia, 198 F.3d 403, 412-13 (3d Cir. 1999).  Here, there is no question that Miller has satisfied the first element of his prima facie case.   Moreover, because his case concerns his suspension and eventual termination, the second element is also satisfied.  In support of his claim that white officers were treated more favorably, Miller points to the fact that several white Probation and Parole Officers who lost their weapons in the past were given five-day suspensions, while he was suspended for several months without pay.

In response, the DOC contends that Miller was not suspended  simply because he lost his weapon.  On the contrary, the DOC suspended Miller because he lost his weapon, failed to timely report the loss, and he gave conflicting accounts about the loss of his weapon to police.  Miller cannot identify any other officer who engaged in similar conduct after losing his or her weapon yet received less severe sanctions than he did.  Thus, Miller presented no evidence from which a jury could conclude that the DOC's articulated reasons for its adverse employment actions were a pretext for discrimination.

Consequently, we will affirm the summary judgment against Jones on his race discrimination claim under Title VII.

We will also affirm the dismissal of Miller's retaliation claim. To establish a prima facie case of retaliation under Title VII, Miller must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. American Sterlizer Co., 126 F.3d 494, 500 (3d Cir. 1997). If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. Id. "The employer's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action; the defendant need not prove that the articulated reason actually motivated the action." Id. at 500-501 (citation, internal quotations and brackets omitted). "If the employer satisfies its burden, the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501. "The plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. Id. The burden of proof remains at all times with the plaintiff." Id.

"To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process. . . ." Id. "This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." Id. (citations omitted).

As noted above, the DOC contends that it suspended Miller because he provided conflicting stories about the loss of his weapon and because he failed to promptly report that loss. The DOC contends that it fired Miller for those same reasons. In an attempt to discredit the DOC's proffered reasons for his discharge, Miller argues that he was acquitted of the criminal charges of falsely reporting an incident and insists that he was coerced into changing his story about how he lost his weapon. However, the acquittal of criminal charges does not impeach or discredit the DOC's explanation for his termination. It simply means that the State of Delaware failed to prove each and every element of the criminal charge beyond a reasonable doubt. His employer was still entitled to conclude that Miller's conduct was inconsistent with his position.

Moreover, Miller has offered absolutely no evidence to support his claim that Officer Joseph coerced him into changing his story about the loss of his weapon. Miller alleges that he gave Joseph a different story because he believed that if he told Joseph want Joseph wanted to hear, the interrogation would end and he would be free to leave the police station. However, it is undisputed that Miller was not under arrest at the time of the questioning. In addition, Miller admitted that he was not physically assaulted or threatened during the course of the interrogation. Moreover, before he became a Probation and Parole Officer, Miller had been a member of the Tulsa, Oklahoma Police Department for four years. He admitted that he regularly spent time both working with, and socializing with, local police officers he knew from his employment as a Probation and Parole Officer.

Given the absolute lack of any evidence of coercion on Officer Joseph's part, Miller's training as a former police officer and as a probation and parole officer, and his admitted knowledge of interrogation techniques, no reasonable jury could find that Officer Joseph coerced Miller into changing his story about how he lost his weapon. Therefore, he has not demonstrated that the DOC's proffered reasons for discharging him were pretextual. Accordingly, the district court properly granted summary judgment to the DOC.

                          IV.

For all of the above reasons, we will affirm the district court.


TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.

/s/Theodore A. McKee

Circuit Judge

DATED: July 29, 2002