

Opinions of the United
States Court of Appeals
for the Third Circuit

2008 Decisions

1-23-2008

# Holster v. McMaster-Carr Sup

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4694

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Holster v. McMaster-Carr Sup" (2008). *2008 Decisions.* Paper 1720.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1720

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4694

———

KERRYANN HOLSTER,
Appellant

v.

MCMASTER-CARR SUPPLY COMPANY;
MCMASTER-CARR SUPPLY COMPANY PROFIT SHARING TRUST;
JOHN DOE CORPORATIONS/ENTITIES 1-10

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 04-cv-01791)
District Judge: The Honorable Garrett E. Brown, Jr., Chief Judge

———

Submitted Under Third Circuit LAR 34.1(a)
November 27, 2007

———

Before: BARRY, FUENTES and GARTH, Circuit Judges

(Filed: January 23, 2008 )

———

OPINION

———

BARRY, Circuit Judge

        Appellant, KerryAnn Holster, appeals the District Court's grant of summary

judgment in favor of appellees. We will affirm.

## I.

On Friday, February 6, 2004, Holster, a long-term employee of McMaster-Carr Supply Company ("MCSC"), informed her supervisor, Shaun Sauer, that she had been summoned for jury duty the following week. According to Holster, Sauer told her that she should take the week off and relax. When Holster went to the courthouse on Monday morning, she was told that she was not needed for jury duty that day and that from then on she was to use a call-in line each morning and afternoon to find out whether it was necessary to appear. On Tuesday morning, she learned via the call-in line that she was not needed for the morning session and, later, that she was not needed for the afternoon session. On Wednesday morning, she was excused for the remainder of the week. Holster had not gone to work on Monday because she did not think she could get there before the end of her shift, and did not drive back and forth between the morning and afternoon call-in times on Tuesday because she did not think she could get back to the courthouse in time for the afternoon session if she learned that she was required to appear. Finally, she did not go to work on Wednesday morning because Sauer, she said, had told her to take the week off.

During the week, Sauer had called the courthouse to find out whether Holster had been required to report for jury duty and learned that she had not. Upon being told of this by Sauer, Sauer's manager, Steve Finn, consulted the branch manager, who told Finn to speak to Holster when she returned to work and to terminate her if she did not have a satisfactory explanation for her absence.

2

When Sauer asked Holster how jury duty had been, she replied that it was "a real pain." She then asked him to note Thursday as a vacation day rather than a day on which she served on the jury because it was a court holiday. Finn later met with Holster and asked her to explain her absence the previous week. Holster told him that she did not have enough time to report back to work on Monday or between the morning and afternoon call-in times on Tuesday, but did not tell him that Sauer had told her to take the week off, claiming she did not want Sauer to get into trouble. After some discussion, she told Finn that she did not want to argue anymore, and said, "[d]o what you have to do." Finn informed her that she was terminated.

Holster applied for unemployment benefits, but the Hearing Examiner found that she had been terminated for gross misconduct and denied her claim. She unsuccessfully appealed to the Appeals Tribunal, the Board of Review, and the Appellate Division of the New Jersey Superior Court. She then filed suit in the U.S. District Court for the District of New Jersey, alleging that she was terminated because of her age, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12, and to prevent her from receiving retiree health benefits and deprive her of continued contributions to her profit sharing plan as part of a plan to terminate long term employees in favor of new hires, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104. She also alleged breach of contract and breach of the implied covenant of

good faith and fair dealing.[1]

## II.

The District Court had jurisdiction over the ERISA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court's order granting summary judgment is plenary. Reese Bros., Inc. v. United States, 447 F.3d 229, 232 (3d Cir. 2006). We "may affirm the district court's order if, when viewing the evidence in the light most favorable to the non-moving party, there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " Id. (quoting Fed. R. Civ. P. 56(c)).

## III.

As a preliminary matter, the District Court determined, after a careful review of preclusion principles, that Holster was collaterally estopped from raising the issues of whether she was given the week in question off and whether she was terminated for gross misconduct. The Court stated:

> Here, not only were the issues in question thoroughly considered in the administrative channels, but the New Jersey Superior Court also considered the issue on appeal. As such, the issues . . . were actually litigated. Furthermore, it was necessary for the state administrative and judicial bodies to determine the issues in order to issue a ruling. Indeed, it was the determination that Plaintiff had not been given the week off and had been terminated for gross misconduct that prevented the issuance of

---

[1] The District Court dismissed these claims finding that they were preempted by ERISA. Those dismissals are not challenged on appeal.

4

unemployment benefits, and remained the sole factors to resolve throughout that legal process. Therefore, the unemployment hearing and rulings, both administrative and judicial, satisfy all three prongs of the issue preclusion analysis. (16a).

The Court also concluded that, for a host of reasons, it would not be unfair to apply issue preclusion, not the least of which were the facts that Holster had counsel and had thoroughly and vigorously litigated the issues in question through the administrative channels and the Appellate Division.

Quoting the holding in Olivieri v. V.M.F. Carpet, Inc., 897 A.2d 1003, 1013 (N.J. 2006), Holster argues that "unemployment compensation determinations are not entitled to collateral estoppel effect." It certainly appears, at least to us, that unlike the proceedings in Olivieri, the proceedings here, as the District Court found, were adequate and fair. The hearing before the Hearing Examiner covered 54 pages of transcript; the Appeals Tribunal affirmed the finding of gross misconduct after yet another hearing; the Board of Review affirmed, finding that Holster had been given a full and impartial hearing and a complete opportunity to offer "any and all" evidence; and the Appellate Division affirmed in a nineteen-page opinion upon being satisfied that there was sufficient evidence to support the Board's factual findings and legal conclusions.

We would not hesitate to conclude that, on this record, collateral estoppel effect should be accorded to the issues in dispute. But the holding in Olivieri is quite clear – "unemployment compensation proceedings do not afford litigants a full and fair opportunity to litigate factual issues sufficient to warrant collateral estoppel effect." Id. at

5

1015. Moreover, the Supreme Court clearly stated that its "broad holding would apply" even if the procedural deficiencies seen in Olivieri were absent. Id. at 1013.

Fortunately, we need not predict whether the Supreme Court would accord collateral estoppel effect in a case such as this where there appears to be no deficiency of any kind and where Holster was fully engaged and represented by counsel throughout. We need not enter the fray because the District Court found that even if collateral estoppel effect was not accorded to the issues in dispute, Holster failed to satisfy her burden of proof on her NJLAD and ERISA claims, a finding with which we agree.

With reference to the NJLAD claim, the District Court found that because Holster did not come to work when she did not have jury duty, she was not meeting MCSC's legitimate expectations at the time of her termination and, therefore, failed to establish a prima facie case of age discrimination under NJLAD.[2] Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) (establishing burden shifting analysis for employment discrimination claims). The Court went on to find that, even assuming she had established a prima facie case, MCSC's explanation that it terminated her because she deceived MCSC by being absent from work on the premise of jury duty was a legitimate, nondiscriminatory reason, and that she failed to prove by a preponderance of the evidence

---

[2] The District Court noted parenthetically that it was questionable that Holster's replacement was sufficiently younger to create an inference of age discrimination because, at the time of her termination, she was forty-two years old and her replacement was thirty-three years old. Furthermore, Holster's co-worker, who remains at MCSC, was fifty years old, Sauer was thirty-seven years old, Finn was forty-three years old, and the branch manager was forty-eight years old.

6

that the stated reason was a pretext for age discrimination.

Neither did the District Court find any merit to Holster's ERISA claim and, indeed, found that MCSC provided compelling evidence to refute that claim. For example, Holster had already become vested in the profit-sharing plan and maintained an option to keep her account balance in the retirement plan, and MCSC had consistently increased its contributions to the retirement plan even though contributions were discretionary.

Viewing the evidence in the light most favorable to Holster, as we are obliged to do, we conclude that the District Court did not err in granting MCSC's motion for summary judgment. We, therefore, will affirm the judgment of the District Court.