Raymond B. SIMMONS, Plaintiff—
Appellant,

v.

AMERICAN AIRLINES, Defendant—
Appellee.

No. 01–15659.
D.C. No. CV–00–00620–JCS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2002.

Decided May 3, 2002.

Before D.W. NELSON and HAWKINS, Circuit Judges; and FITZGERALD, District Judge *.

## MEMORANDUM **

This appeal involves an airline passenger who was removed from a flight with no explanation given for his removal. When the passenger filed suit alleging that his removal was racially motivated, the airline contended that he was a safety threat and that he was removed in accordance with the airline's safety policy. We are called to decide whether the airline's contention satisfied its burden to establish a nondiscriminatory reason for the removal. Because we find that the airline's explanation fails on its own terms, we reverse the grant of summary judgment in favor of the airline.

## FACTUAL BACKGROUND

Raymond Simmons, a black man, boarded American Airlines flight 1726 (originating out of Dallas, Ft. Worth) on August, 19, 1999. At some point after Simmons sat down in seat 29F, a female passenger sitting one row in front of Simmons apparently approached a flight attendant and complained about Simmons' language.

The record contains several different versions of the female passenger's specific complaint. American's motion for summary judgment stated (without citation to any evidence in the record) that the female passenger was offended when she overheard Simmons using many expletives while laughing and talking on a cell phone prior to departure. On the other hand, according to American's event report (which is evidence in the record), Simmons was facing the window and "mumbling obscenities"; the only obscenity specifically listed by the event report, was Simmons' alleged use of the phrase "damn white bitch." Yet a third version of the alleged genesis of the incident emerges from Simmons' complaint: he denies ever saying anything, but states that American employees told him that he had been removed after a female passenger complained because of his alleged use of the phrase "honky bitches."

Although the exact nature of the other passenger's complaint is therefore uncertain, the record does seem clear on the following. One, the flight attendants moved the complaining passenger from her coach seat to first class. After she was moved, she had no further contact with Simmons and made no further complaint about him. Two, the flight attendant who heard the passenger's complaint also chose to brief the captain on the situation. There is no evidence in the record, however, as to what was said in this conversation. Three, after talking with the flight attendant, the captain apparently decided to have Simmons removed from the airplane. There is no testimony in the record from the captain explaining his decision to remove Simmons, but an event report prepared by an American Airlines employee, Dan Garza, states that the captain was

---

* The Honorable James M. Fitzgerald, Senior District Judge for the district of Alaska, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

motivated by a desire "to guarantee the safety of the other [passengers]." Four, after the captain made his decision, Simmons was approached by the gate agent and another American employee. Simmons was told, without explanation, to get his carry-on bag and follow the American agents off the plane.[1]

A couple months after this incident, Simmons filed a *pro se* complaint for racial discrimination against American Airlines in California state court. American removed the case to federal court and subsequently filed a motion for summary judgment. The sole evidence offered by American in support of its motion for summary judgment (other than Simmons' responses to form interrogatories) was a declaration by George Warner, a "Team Leader for Insurance and Risk Management." Attached to this declaration were copies of American Airlines' flight manual, which includes American's policy on passenger safety and misconduct. Also attached to the declaration was the aforementioned event report detailing the incident.

The court below granted American's motion for summary judgment. The court found that summary judgment was warranted because American had articulated a legitimate, non-discriminatory reason for its removal of Simmons, and Simmons had introduced no evidence to show that this reason was pretextual. More specifically, the court found that Simmons was removed from the aircraft pursuant to American's safety policy because of his misconduct, namely, the alleged use of obscenities within earshot of another passenger. Absent proof of pretext, the court concluded that no reasonable jury could find that Simmons was removed because of his race.

## DISCUSSION

### A. Hearsay

Affidavits in support of a motion for summary judgment "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." Fed. R. Civ. Pro. 56(e). Simmons argues that American's motion for summary judgment was deficient because the sole support for it—the Warner affidavit—is hearsay evidence that would not be admissible at trial. We disagree.

█ The Warner affidavit was accompanied by two exhibits. The first was a copy of portions of American's flight and safety manual. This exhibit was not hearsay evidence because it was not being offered to prove the truth of the matter asserted. The second exhibit was the event report prepared by Dan Garza. This report was properly considered under the business record exception to the hearsay rule; it was prepared by Garza roughly at the time of the event and in the regular course of his business duties as a CCRO.

### B. The Merits of Summary Judgment

The question before us in this case is whether American provided a legitimate, non-discriminatory reason for removing Simmons from the plane.

█ The burden-shifting structure devised by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67

---

1. Unaware of why he was being removed, Simmons asked one of the American employees as he stepped off the plane: "Do you believe that I am a high-jacker?" In the court below, American sought to use this comment as an additional reason for removing Simmons. However, the court properly recognized that the "high-jacker" comment was a red herring because the comment was made after Simmons had already been removed from the aircraft.

L.Ed.2d 207 (1981), does not give American carte blanche to proffer any explanation, regardless of plausibility, for its actions to shift the burden back to Simmons. Rather, as *Burdine* states, American's evidence must be "legally sufficient to justify a judgment for the defendant." *Id.* at 255, 101 S.Ct. 1089. With this standard in mind, we believe that American did not satisfy its burden of articulating a legitimate, non-discriminatory reason for removing Simmons from flight 1726. More specifically, we hold that American's evidence is legally insufficient to warrant summary judgment in its favor because there isn't sufficient evidence in the record to justify the conclusion that American removed Simmons pursuant to its own safety policy.

At oral argument, counsel for American Airlines contended that one specific provision of American's passenger misconduct policy authorized the flight attendants to remove Simmons from the aircraft.[2] We reproduce the text of that provision [Section 1.16(E)(1) ] here:

> Passenger misconduct requiring the Captain's attention prior to departure may result in removal of the passenger from the aircraft. The Captain should assess whether misconduct on the ground may escalate in flight.

To be subject to removal under 1.16(E)(1), a passenger must therefore (1) engage in misconduct that (2) requires the captain's attention. Paragraph A of the passenger misconduct section of American's flight manual defines in detail what constitutes passenger misconduct for purposes of the policy. We therefore look to the text of Paragraph A to assess whether Simmons was actually engaged in misconduct, and if so, if it was misconduct of a type that required the captain's attention.[3]

Paragraph A of American's flight manual divides passenger misconduct into three escalating categories, the third being the highest and the first being the lowest. Category One misconduct is defined by the FAA and reprinted in the manual as follows:

> The Flight Attendant requests compliance with crewmember instructions and the passenger complies with the request. No further action is required by the Flight Attendant nor does it warrant report to the cockpit, the carrier, or the FAA.

This is contrasted with Category Two misconduct, where a passenger continues his disturbance, such as verbal abuse, that interferes with cabin safety after being warned. Category One misconduct is fur-

---

**2.** American also claims that Simmons' removal was authorized by a contract condition that provides that American can refuse to transport any passenger "for one of several reasons, including but not limited to ... (6) your conduct is disorderly, abusive or violent." No one has claimed that Simmons was disorderly or violent. Nor could American claim that Simmons was abusive because there is no indication that Simmons directed his remarks to anyone on the plane.

**3.** When asked about the interplay of Section 1.16(E)(1) and the policy's definitions in Paragraph A, counsel for American asserted that "those categories of passenger behavior deal with in-flight disturbances, and have nothing

to do with this case." [Tr. of Oral Arg. (audio) ]. We think not.

There is absolutely no language in Paragraph A that limits its three-part definition of passenger misconduct only to in-flight situations. Rather, the definition of passenger misconduct in Paragraph A speaks in general terms no less applicable to a plane that hasn't taken off than one that has. Granted, Paragraphs C and D of the passenger misconduct section do discuss procedures for dealing with misconduct that occurs in-flight. But those paragraphs are wholly independent of—and contrasted by—the broad, defining language in Paragraph A that admits of no similar in-flight connotation.

ther contrasted by Category Three misconduct, which occurs when a passenger or crewmember is injured or subjected to a credible threat of injury—whether a warning was given or not.

American's proffered legitimate, non-discriminatory reason fails on its own terms because Simmons was not engaged in any misconduct—much less misconduct that required the captain's attention. Simmons was never warned in any way prior to being removed from the plane. In fact, he was never even told of the complaint by the other passenger, much less asked if it was true. Importantly, though, Paragraph A requires that even the lowest category of misbehaving passengers be given this courtesy before their conduct may be branded as "misconduct."

Furthermore, it is troubling that there are no affidavits in the record from the complaining passenger, the flight attendants who informed the captain, or for that matter, the captain himself. There is substantial confusion in this case over what Simmons allegedly said (and how he said it). *See supra* at 575. Viewing, as we must, the evidence in the light most favorable to Simmons, we must therefore take seriously his assertion that he in fact never said *anything* of an offensive nature. And once we take that assertion seriously, we must also take seriously (in the absence of testimony from the parties involved) the possibility that Simmons' race played a part in the conversations that ultimately led to his removal.

## C. *Emotional Distress*

▆ We hold that Simmons' complaint did not assert a claim for negligent or intentional infliction of emotional distress. Simmons' complaint is entitled "Complaint for Discrimination", and the only legal authority accompanying it is the excerpt of California's Unruh Civil Rights Act. Moreover, the letter from Simmons to American attached to the complaint states only that he would be "suing American Airlines in thirty days for racial discrimination, establishment discrimination and violations of my civil rights." Even taking into account our practice to construe *pro se* pleadings liberally, we are of the opinion that the complaint references emotional distress in terms of the harm Simmons suffered as the result of the alleged discrimination, not as a separate cause of action.

## CONCLUSION

The grant of summary judgment is REVERSED and the case is REMANDED for proceedings consistent with this disposition.